1998-NMCA-033

954 P.2d 748

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Steven Andrew WARSOP,
Defendant–Appellant.**

No. 18106.

Court of Appeals of New Mexico.

Dec. 9, 1997.

Certiorari Denied Feb. 3, 1998.

**684**

Tom Udall, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, for Plaintiff–Appellee.

Leonard J. Foster, Albuquerque, for Defendant–Appellant.

*OPINION*

ARMIJO, Judge.

1. Defendant was convicted of retaliating against a witness in violation of NMSA 1978, Section 30–24–3(B) (1991) (prior to 1997 amendment). On appeal, he claims: (1) the evidence was not sufficient to support the element of intent required to sustain his conviction for retaliating against a witness; (2) the trial court erred by not instructing the jury on the lesser-included offense of "attempted retaliation against a witness"; (3) the trial court erred by admitting evidence of the name and nature of the prior felony offense that the victim had witnessed; (4) the trial court erred by instructing the jury that "criminal sexual penetration is a felony offense"; and (5) the evidence was insufficient to support aggravation of his sentence. For the reasons stated below, we affirm.

## I. BACKGROUND

2. In the summer of 1992, the victim reported to police that she had been raped and beaten by Defendant at her residence in Albuquerque. Investigation of the rape and beating led to felony charges against Defendant. The victim testified at the grand jury hearing on these charges. As a result, Defendant pled guilty to criminal sexual pen-

etration (CSP) in the second degree and was incarcerated in the Penitentiary of New Mexico.

3. While in the penitentiary, Defendant attended a parole hearing on May 13, 1996, at which he was granted parole with a tentative release date of June 10, 1996. However, as Defendant was being escorted back to his cell immediately after this parole hearing, Officer Arana, a correctional officer, witnessed and reported the following:

> At approximately 9:00 a.m. on the above date, I was escorting [Defendant] back to his cell from the parole board at which time [he] told me that he was not going to do these conditions of the parole and to fuck the parole board. He then said as soon as he saw that bitch he was going to kill her for what she did, and that he should have killed her the first time.... He also said that just because her dad is a judge and her uncle is a district attorney, she thinks she is covered. Fuck her dad. He then said that he didn't care if he came back but at least this time it will be for murder. He then told me I'll see him back sooner than I think.

Officer Arana's report of Defendant's statement led to the charge of retaliation against a witness that is the subject of this appeal.

4. Prior to Defendant's trial on the retaliation charge, his defense counsel filed a motion in limine seeking to exclude evidence relating to his prior conviction for raping the victim. Defense counsel asserted that the name and nature of the felony witnessed by the victim was irrelevant, unfairly prejudicial, and inadmissible character evidence. The State countered that the evidence was admissible under Rule 11–404(B), NMRA 1997, for the purpose of showing Defendant's intent and motive, and that the State would limit its prejudicial effect by not eliciting any testimony regarding the details of what happened during the rape. The trial court denied Defendant's motion.

5. At trial, the victim identified Defendant and then described the rape and beating incident as follows:

> Question: Was there an incident at your residence involving this individual?

> Answer: Yes, sir.

> Question: And what was the nature of that incident?

> Answer: Mr. Warsop came to my house and he—he raped me and he beat me.

> Question: At the time that he did that, did he make any threats to you?

> Answer: Yes.

> Question: What did he say?

> Answer: He said he would kill me, and he would kill my children.

> Question: After that rape occurred, did you report that matter to the police?

> Answer: Yes, I called 911.

The victim further testified that after she told the police what had happened and testified before a grand jury, Defendant was convicted and sentenced for the crime of raping her. She did not give any further details regarding the rape and beating incident or other threats.

6. Officer Arana testified regarding the statement Defendant made after the parole hearing and indicated that he believed Defendant was serious when he made that statement because of "the look on his face. He looked mad. He looked vindictive. He looked like he wanted to pay back for the time he did." Officer Arana further testified that he did not believe the parole hearing prompted Defendant's anger, since the parole board had granted Defendant's parole. Agent Murray, who investigated the incident reported to him by Officer Arana, testified that Defendant admitted making the statement and that CSP is a felony offense.

7. Testifying in his own defense, Defendant also admitted that he made the statement to Officer Arana and that he was convicted of CSP in the second degree resulting in personal injury against the victim. However, he testified that when he made the statement to Officer Arana, he had no intention of harming the victim or having her hear what he said. He further explained that he was prohibited from contacting the victim.

8. Defendant requested a jury instruction on the lesser-included offense of attempted retaliation, which the trial court denied. The jury was instructed that the elements of the crime of retaliation against a witness are: (1)

knowingly threatening to cause bodily injury to another person; (2) with the intent to retaliate against any person; (3) for giving information to a law enforcement officer relating to the commission of a felony offense. The jury also was instructed that CSP is a felony offense. Thereafter, the jury returned a guilty verdict, and Defendant was convicted and sentenced for one count of retaliation against a witness. The trial court aggravated Defendant's sentence. This appeal followed.

## II. DISCUSSION

### A. Intent Required for Retaliation Against a Witness

9. Section 30–24–3(B) states that:

Retaliation against a witness consists of any person knowingly engaging in conduct that causes bodily injury to another person or damage to the tangible property of another person, or threatening to do so, with the intent to retaliate against any person for any information relating to the commission or possible commission of a felony offense or a violation of conditions of probation, parole or release pending judicial proceedings given by a person to a law enforcement officer.

Quoting the definition of "threat" in *Black's Law Dictionary* 1480 (6th ed.1990), Defendant asserts that there can be no "threatening" under this statute without a "communicated intent," and that evidence of such a "communicated intent" was lacking in this case.

10. There is no Uniform Jury Instruction for the crime of retaliation against a witness, and the intent required to sustain a conviction for this crime is an issue of first impression in New Mexico. However, we note that Section 30–24–3(B) is almost identical to the federal statute on "[r]etaliating against a witness, victim, or an informant," 18 U.S.C. § 1513 (1994). We view cases from other jurisdictions interpreting practically identical statutory language as persuasive authority on this issue. *See State v. House,* 1996 NMCA 052, ¶ 11, 121 N.M. 784, 918 P.2d 370. We also look to statutes concerning similar crimes such as stalking,

harassment, intimidation, or threatening public officials to determine the meaning of New Mexico's retaliation statute. *Cf. Quintana v. New Mexico Dep't of Corrections,* 100 N.M. 224, 225, 668 P.2d 1101, 1102 (1983) (provisions of statute must be read together with other statutes relating to same subject matter).

11. We first address Defendant's contention that the statute is not violated if there is no intent to communicate the threat to the victim or to carry out the threat. This contention has been rejected by other courts interpreting practically identical statutory language. *See State v. Jones,* 642 So.2d 804, 805–06 (Fla.Dist.Ct.App.1994) (interpreting Fla. Stat. § 914.23 (Supp.1991)); *United States v. Maggitt,* 784 F.2d 590, 593 (5th Cir.1986) (interpreting 18 U.S.C. § 1513). As noted in *Jones,* 642 So.2d at 805–06:

The only intent requirement contained in the statute is that the defendant make the threats with the intent to retaliate against the witness; [the statute] does not require that the defendant have the intent to communicate his threats to the witness or, even, that the defendant have the intent to carry out his threats.

Hence, a defendant who threatened to kill three individuals who testified against him in a pending civil lawsuit could be charged with retaliating against a witness in a Florida court even though the defendant's threats were made in the presence of his probation officer rather than the individuals who testified against him. *Id.* at 806.

12. Interpreting a statute imposing criminal liability when a person "communicates to another a threat," the Montana Supreme Court offered similar reasoning:

We believe that it is within the language and intent of the statute that the person who receives the threat can be different from the person who is sought to be compelled by the threat. Otherwise, for example, an individual could contact the news media threatening to take the life of a hostage if the Governor does not meet his demands, and he could not be convicted under this statute. But it is this very situation which the statute is aimed at outlawing.

*State v. Lance,* 222 Mont. 92, 721 P.2d 1258, 1269 (1986); *see also State v. Hansen,* 122 Wash.2d 712, 862 P.2d 117, 118 (1993) (en banc) (affirming conviction for intimidating judge where the defendant told attorney he was attempting to retain that he was going to " 'get a gun and blow them all away, the prosecutor, the judge and the public defender' "). The rationale for imposing criminal liability for such indirect threats is especially strong where, as in this case, the defendant is prohibited from contacting the victim and therefore may resort to other means of communicating the threat.

13. For these reasons, we believe that the legislature intended Section 30–24–3(B) to impose criminal liability even if the threat is received by a person other than the witness against whom the defendant intends to retaliate, so long as it is reasonable to expect that the person who receives the threat would inform the victim of the threat in some way. We also believe that criminal liability under Section 30–24–3(B) does not depend on whether Defendant intended to carry out his threat to kill the victim.

14. Section 30–24–3(B) contains no requirement that the defendant must intend to carry out the threat in order for the threat to be credible. *Cf.* NMSA 1978, § 30–3A–3(B) (1995) (repealed 1997) (defining "credible threat" as threat made with intent and ability to carry out the threat); *Patterson v. Globe Am. Cas. Co.,* 101 N.M. 541, 543, 685 P.2d 396, 398 (Ct.App.1984) (legislature's failure to include provision in statute suggests that it did not intend to include provision). Section 30–24–3(B) only requires an "intent to retaliate." As recently interpreted by the Utah Court of Appeals:

"to retaliate" does not connote some retributive physical violence. Rather, it connotes the simple concept of "pay back." The [victim], by his action, had upset [the defendant]. By threatening the [victim, the defendant] could perhaps upset him as well, thereby fully accomplishing the "pay back" that is the essence of retaliation.

*State v. Fixel,* 945 P.2d 149, 152 (Utah Ct. App.1997) (citation omitted). We determine that this interpretation is consistent with New Mexico law. *Cf.* NMSA 1978, § 30–3A–2 (1997) (imposing criminal liability for pursuing a pattern of conduct that is intended to annoy, seriously alarm, or terrorize another person); NMSA 1978, § 30–3A–3 (1997) (imposing criminal liability for pursuing a pattern of conduct that would cause a reasonable person to feel frightened, intimidated, or threatened). In the present case, the jury could reasonably infer that Defendant expected that his statement to Officer Arana would be communicated to the victim, and that Defendant intended to accomplish "pay back."

15. Defendant next contends that Officer Arana's testimony was insufficient to reasonably support such inferences because Officer Arana was not an expert on "body behavior." We disagree. A defendant's intent "is seldom, if ever, susceptible to direct proof, and may be proved by circumstantial evidence." *State v. Manus,* 93 N.M. 95, 98, 597 P.2d 280, 283 (1979); *see also Jones,* 642 So.2d at 806 (applying this principle in context of retaliation against witness). In this case, Officer Arana testified that Defendant appeared to be serious when he made the threatening statement. This testimony was within the scope of a lay opinion that is admissible under Rule 11–701, NMRA 1997. *See State v. Landgraf,* 1996 NMCA 024, ¶¶ 16–20, 121 N.M. 445, 913 P.2d 252 (no abuse of discretion in admitting police officer's lay opinion regarding Defendant's mental state). In addition, the victim's testimony provided corroboration: Defendant knew where she lived, had threatened her during the rape and beating incident, and had a motive for retaliating against her because her report is what led to his conviction and sentence for CSP. There was sufficient evidence to support Defendant's conviction.

**B.** *Jury Instruction on Attempted Retaliation*

16. The foregoing discussion of the intent required to sustain Defendant's conviction for retaliation against a witness largely disposes of his additional contention that the trial court erred by not instructing the jury on the lesser-included offense of attempted retaliation. The fact that Defendant's threatening statement was not com-

municated directly to the victim does not render the crime incomplete because a threat may be communicated to a victim indirectly as well as directly. *See Jones*, 642 So.2d at 805–06; *Lance*, 721 P.2d at 1269. A lack of evidence that Defendant took further steps to carry out his threat to kill the victim also does not render the crime incomplete because no intent to carry out the threat is required to sustain a conviction under Section 30–24–3(B). *See Jones*, 642 So.2d at 805–06; *Fixel*, 945 P.2d at 152. The retaliation in this case was complete when Defendant's threatening statement was communicated to Officer Arana, a person who reasonably could be expected to warn the victim of the threat.

■ 17. Defendant admitted making the statement in the presence of Officer Arana. Thus, there is no evidence that Defendant did less than what was required to complete the crime. *See State v. Reynolds*, 111 N.M. 263, 270, 804 P.2d 1082, 1089 (Ct.App.1990) (no attempt instruction when the defendant admits doing the act but claims his intent was innocent); 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 6.3(c), at 58 (1986) (same). The trial court was correct in refusing to give an "attempted retaliation" instruction in this case.

### C. *Admission of Evidence Regarding Prior CSP Conviction*

■ 18. Defendant's next contention is that the trial court erred by admitting evidence regarding the name and nature of the prior felony offense which formed the basis for the charge that he retaliated against a person who witnessed that offense. Defendant contends that this evidence is inadmissible because: (1) it is not relevant under Rule 11–402, NMRA 1997; (2) it is evidence of other crimes, wrongs, or acts and is being used to show action in conformity therewith under Rule 11–404(B), (3) its probative value is substantially outweighed by the danger of unfair prejudice under Rule 11–403, NMRA 1997. The State responds that the evidence regarding Defendant's prior CSP conviction is admissible under Rules 11–402, 403 and 404(B) because it is relevant and highly probative of Defendant's intent

and motive. We review the trial court's evidentiary rulings for abuse of discretion. *See State v. Conn*, 115 N.M. 99, 101, 847 P.2d 744, 746 (1993) (quashing writ of certiorari).

19. To support his argument that the evidence regarding Defendant's prior CSP conviction was inadmissible, Defendant relies on *State v. Tave*, 1996 NMCA 056, ¶¶ 14–15, 122 N.M. 29, 919 P.2d 1094, in which this Court ruled that the name and nature of a prior felony conviction are irrelevant, and therefore inadmissible, to prove that the defendant committed an essential element of the crime of being a felon in possession of a firearm. *See also Old Chief v. United States*, 519 U.S. 172, ——, 117 S.Ct. 644, 655, 136 L.Ed.2d 574 (1997) (applying Fed.R.Evid. 403). However, *Tave* and *Old Chief* are distinguishable because in those cases the felon-in-possession charge arose from an incident that was wholly unrelated to the underlying felony on which it was predicated.

20. In contrast, Defendant's prior felony was closely related to the retaliation offense because the same person was the victim of both crimes. The State could not rest after proving that Defendant had committed a prior felony; it also needed to show that the victim of Defendant's retaliation was a witness who had reported that prior felony to a law enforcement officer, and that Defendant intended to retaliate against that witness for doing so. *See* § 30–24–3(B); *cf. State v. Hamilton*, 327 S.C. 440, 486 S.E.2d 512, 515 (S.C.Ct.App.1997) (name of prior felony conviction admissible when it forms specific element of crime charged).

21. Under these circumstances, the victim's testimony regarding what she witnessed and reported with respect to the prior felony is relevant to prove Defendant's intent and motive with respect to the retaliation charge. *See State v. Woodward*, 1995 NMSC 082, ¶ 17, 121 N.M. 1, 908 P.2d 231 (evidence that the defendant struck victim in past was admissible to show requisite mental state for first-degree murder). Specifically, the victim's testimony in this case is relevant to show that: (1) she reported the prior felony offense to a law enforcement officer; (2) the offense and her report were sufficiently serious to motivate Defendant to retaliate

against her; and (3) Defendant could anticipate that the victim would feel threatened by his retaliatory statement. *Compare Williams v. State,* 677 N.E.2d 1077, 1081–82 (Ind.Ct.App.1997) (holding that information showing that the defendant was charged with offenses that victim witnessed, and victim's statement outlining what he witnessed, were relevant to show intent and motive required for conviction under Indiana intimidation statute), *with Casey v. State,* 676 N.E.2d 1069, 1072–73 (Ind.Ct.App.1997) (finding evidence insufficient to support conviction under Indiana intimidation statute where evidence did not indicate that reason for threat was to retaliate for victim's prior act).

22. In this case, both the State and the trial court were careful to limit the prejudicial effect of the victim's testimony. The State did not elicit testimony regarding the details of the rape and beating incident, and the trial court granted Defendant's motion to exclude evidence of other threats that the victim received while the rape prosecution was pending. Under these circumstances, we cannot say that the trial court abused its discretion by admitting evidence regarding the name and nature of Defendant's prior felony. The trial court was correct in determining that such evidence was relevant to establishing Defendant's intent and motive, and its probative value was not substantially outweighed by its prejudicial effect.

### D. *Jury Instruction That CSP is a Felony*

23. The foregoing discussion of the admissibility of evidence regarding Defendant's prior CSP conviction largely disposes of Defendant's contention that the trial court erred by instructing the jury that CSP is a felony. The instruction is necessary to convey an essential element of the crime of retaliation against a witness, namely that the offense which the victim witnessed and reported was a felony. *See* § 30–24–3(B); Rule 5–608(A), NMRA 1997 (trial court must instruct jury upon all questions of law essential for conviction). Moreover, any information that this instruction conveyed regarding the name and nature of Defendant's prior felony is cumulative of other testimony regarding what the victim witnessed and reported to police. Hence, any error in disclos-

ing the name and nature of Defendant's prior felony conviction through the use of this jury instruction is harmless. *See Woodward,* 1995 NMSC 082, ¶ 47, 121 N.M. 1, 908 P.2d 231 ("The erroneous admission of cumulative evidence is harmless error because it does not prejudice the defendant.").

### E. *Sufficiency of Evidence to Aggravate Sentence*

24. Defendant asserts on appeal that even if we do not reverse his conviction, we should reverse and remand for resentencing because the State did not give Defendant adequate notice of its intent to seek aggravation of Defendant's sentence under NMSA 1978, Section 31–18–15.1 (1993). Although we agree that Defendant must be given adequate notice in this context, *see Caristo v. Sullivan,* 112 N.M. 623, 631, 818 P.2d 401, 409 (1991), we determine that Defendant has failed to show how he was prejudiced by the type of notice given in this case, *see State v. Tortolito,* 124 N.M. 368, 950 P.2d 811 (1997).

25. The aggravating factor presented by the State and relied upon by the trial court in its decision to enhance Defendant's sentence was the level of "anger and ill will" that Defendant displayed toward the victim. Defendant already was on notice of this aggravating factor because it is among the circumstances forming the basis of the retaliation charges on which Defendant was convicted. *See State v. Kurley,* 114 N.M. 514, 519, 841 P.2d 562, 567 (Ct.App.1992). Furthermore, Defendant points to no additional mitigating factors that he would have presented if he had received additional notice. For these reasons, we affirm the trial court's decision to aggravate Defendant's sentence.

## III. CONCLUSION

26. For the foregoing reasons, we affirm Defendant's conviction for retaliation against a witness and the aggravation of his sentence.

27. **IT IS SO ORDERED.**

FLORES and BOSSON, JJ., concur.