2004-NMCA-014

84 P.3d 690

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Vernon McGEE, Defendant–Appellant.**

**No. 23,203.**

Court of Appeals of New Mexico.

Dec. 3, 2003.

Certiorari Denied No. 28,432, Jan. 15, 2004.

Patricia A. Madrid, Attorney General, James O. Bell, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

VIGIL, Judge.

{1} A jury found Defendant guilty of one count of retaliation against a witness and six counts of violating an order of protection under the Family Violence Protection Act. NMSA 1978, §§ 30–24–3(B) (1997); 40–13–6(E) (1999). Defendant was found to be a habitual offender with three or more prior felony convictions, and received an enhanced sentence on the retaliation conviction of seventeen years and consecutive sentences of 364 days each on the order of protection violations for a total sentence of twenty-three years minus six days. Defendant appeals, contending: (1) the evidence is insufficient to support four of the order of protection violations, (2) the evidence is insufficient to support the retaliation conviction, (3) the trial court committed reversible error in admitting evidence of his conviction for intimi-

dation of a witness, and (4) consecutive sentences on the order of protection violations violate double jeopardy. We affirm.

**BACKGROUND**

{2} On June 9, 1999, Defendant returned home from work and told Victim, who was then his wife, that he intended to quit his job. "Victim was unhappy with Defendant's decision and the couple argued until they both fell asleep. Two days later the argument turned violent. Victim was assaulted and beaten in various ways and at various times. She was verbally threatened, and kept forcibly from leaving the house." *State v. McGee,* 2002–NMCA–090, ¶ 2, 132 N.M. 537, 51 P.3d 1191 (hereinafter *McGee I* ).

{3} After fleeing the police, Defendant was arrested. While in jail awaiting trial, "Defendant wrote letters to Victim. In those letters, Defendant informed Victim people were watching her every move, that he knew what she was doing and thinking at all times, and that she would never be free of him until one of them was dead." Victim considered the letters "threatening and believed that Defendant would kill her if she testified against him at trial." *Id.* ¶ 3. As a result of these acts, an order of protection prohibiting domestic violence was filed on July 1, 1999, under the Family Violence Protection Act, NMSA 1978, §§ 40–13–1 to 40–13–8 (1987, as amended through 2001). The order prohibited Defendant from writing to, talking to, visiting, or contacting Victim. The order gave notice that a conviction for violation of its provisions could result in a sentence of incarceration of up to one year, and Defendant was served with a copy of the order at the Otero County Detention Center that same day.

{4} The State charged Defendant with various offenses as a result of the violence on June 11, 1999, and Victim testified at the trial in May 2000. On September 26, 2000, Defendant was convicted of aggravated battery against a household member, NMSA 1978, § 30–3–16 (1995), false imprisonment, NMSA 1978, § 30–4–3 (1963), resisting, evading or obstructing an officer, NMSA 1978, § 30–22–1(B) (1981), and intimidation of a witness, NMSA 1978, § 30–24–3(A) (1997).

**ORDER OF PROTECTION CONVICTIONS**

█ {5} Defendant asserts the evidence is insufficient evidence to support four convictions for violating the order of protection filed on July 1, 1999, pursuant to the Family Violence Protection Act. He argues that the evidence fails to establish he violated the "no contact" directive of the order by calling Victim's home from the Otero County Detention Center, and at best only proves an attempt to violate the order because he did not communicate with her on those occasions. We disagree.

█ {6} In reviewing the sufficiency of the evidence, we consider the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences in favor of the verdict. "This court does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *State v. Estrada,* 2001–NMCA–034, ¶ 40, 130 N.M. 358, 24 P.3d 793 (internal quotation marks and citation omitted).

{7} The order of protection prohibited Defendant from writing to, talking to, visiting, or contacting victim. Defendant was convicted of violating the order of protection four times on February 16, 2000, by calling Victim from the Otero County Detention Center. However, Victim could not recall whether she was in town on that day, whether she received any telephone calls on that day, or whether the Otero County Detention Center number showed up on her caller ID for that date. She could only testify generally that she recalled seeing the Otero County Detention Center number on her caller ID system "several times."

{8} Each inmate at the Otero County Detention Center received a PIN number for using the telephones located in the day room of each housing pod. An inmate must enter an active PIN in order to initiate a call, although one inmate can use another's PIN number. A recording is then made that identifies the Otero County Detention Center as the originating point of the call, followed by a three-second gap in the recording. That gap allows the inmate to identify him-

self to the recipient so the recipient can decide whether to accept or deny the call. However, during this three-second gap, the inmate is not limited to saying his name; he can say whatever he wants. The pre-recorded message will play: (1) identifying the call as a collect call originating from the Otero County Detention Center; (2) the inmate-caller's pre-recorded self-identification; followed by (3) prompts directing the recipient of the call to affirmatively enter a "1" to accept the call or a "2" to affirmatively deny the call, at which time the attempted connection will be terminated.

{9} Reports were generated showing the outgoing calls from the Otero County Detention Center to Victim's home. The report showed that five calls to Victim's home on February 16, 2000, were made using Defendant's PIN number: the first call was aborted by the caller before it rang through, the second, fourth, and fifth calls went unanswered, and the third call was affirmatively denied. The calls were made in close temporal proximity to each other, at 2:43 p.m., 2:56 p.m., 3:00 p.m., 3:03 p.m., and 3:05 p.m., respectively.

{10} The evidence supports the jury's verdict that Defendant "contacted" Victim by making the second, third, fourth, and fifth calls. Although three of the calls were unanswered, the jury was free to conclude, based on the evidence, that Victim's caller ID recorded those calls as coming from the Otero County Detention Center. Defendant made "contact" with Victim in each instance because a "contact" is not limited to a direct communication. See the definition of "contact" in Webster's Third New International Dictionary (unabridged) 241 (2002); *United States v. Lampley*, 573 F.2d 783, 787 (3d Cir.1978) (holding defendant cannot evade liability by placing only operator-assisted calls because operator acts as agent of caller for purposes of contacting the party called). One call was affirmatively denied supporting the jury's verdict that the call was made and Victim refused it. To the extent Defendant argues that the evidence is insufficient to prove he made the four calls, that argument also fails. *See Michaud v. United States*, 350 F.2d 131, 133 (10th Cir.1965) (holding eyewit-

ness testimony that defendant was in and near telephone booth at time of call presented a jury question on identity of the caller); *State v. Deaver*, 6 Wash.App. 216, 491 P.2d 1363,1365 (1972) (noting that identity of caller may be established by direct or circumstantial evidence).

## RETALIATION CONVICTION

{11} Defendant argues the evidence is insufficient to support his conviction for retaliation against a witness. We apply the same standard of review to this claim as we did to the order of protection convictions pursuant to *Estrada* and affirm.

{12} Victim testified that on October 2, 2000, just five or six days after Defendant was sentenced, she received two calls from Defendant while he was incarcerated in the Otero County Detention Center. Victim answered the first call. A recorded message said it was a collect call and then she heard Defendant state his name, "Vernon McGee," identifying himself as the caller. Victim had no doubt the voice was Defendant's, and she immediately hung up. A second call immediately followed. Victim's niece who was living with Victim, testified she answered the second call. Again, a recorded message said it was a collect call, and instead of saying his name, Defendant said, "[S]omeone's coming to get you." Victim's niece recognized Defendant's voice, and immediately hung up. Victim and her niece testified that the calls "scared" and "frightened" the Victim. Victim immediately called the police and when they arrived at her house, she showed them her caller ID that displayed the two calls that had just come from the Otero County Detention Center.

{13} Defendant argues that the foregoing evidence is insufficient to allow the jury to find beyond a reasonable doubt that he threatened Victim with the specific intent to retaliate against her, an essential element of retaliation against a witness under Section 30–24–3(B). Specifically, he argues that the threat he made is only "generic" to the long and stormy relationship between himself and the Victim, and not because of Victim's complaint and testimony against Defendant. We disagree.

■ {14} We have previously described what constitutes a specific intent to retaliate under Section 30–24–3(B). In *State v. Warsop*, 1998–NMCA–033, ¶ 14, 124 N.M. 683, 954 P.2d 748, we said:

> "[T]o retaliate" does not connote some retributive physical violence. Rather, it connotes the simple concept of "pay back." The [victim], by his action, had upset [the defendant]. By threatening the [victim, the defendant] could perhaps upset him as well, thereby fully accomplishing the "pay back" that is the essence of retaliation.

(quoting *State v. Fixel*, 945 P.2d 149, 152 (Utah Ct.App.1997)). Moreover, *Warsop* states that retaliation under Section 30–24–3(B) does not depend on whether the Defendant intends to carry out his threat. It only requires the intent to retaliate or to exact "pay back" which does not necessarily involve retributive physical violence. *Id.*

■ {15} Proof of intent is rarely provable by direct evidence. That is why circumstantial evidence must often be relied upon for its proof. *See Estrada*, 2001–NMCA–034, ¶ 42, 130 N.M. 358, 24 P.3d 793 (recognizing proof of intent rarely proved directly and often proved by circumstantial evidence). Circumstantial evidence, like direct evidence, will support a jury's finding of a specific intent. *See State v. Durant*, 2000–NMCA–066, ¶ 15, 129 N.M. 345, 7 P.3d 495 (concluding circumstantial evidence proved specific intent beyond a reasonable doubt).

{16} Defendant argues that *Casey v. State*, 676 N.E.2d 1069 (Ind.Ct.App.1997) supports his argument that the evidence is insufficient to prove his intent in this case. However, *Casey* involved a prosecution for intimidation under Indiana law in which the statutory elements of intent differ from the elements of intent to retaliate under Section 30–24–3(B).

{17} We hold that the direct and circumstantial evidence supports the jury's verdict that Defendant called Victim on October 2, 2000, with the requisite intent to accomplish what Section 30–24–3(B) prohibits. *See State v. Coffin*, 1999–NMSC–038, ¶ 77, 128 N.M. 192, 991 P.2d 477 (stating a jury is free to draw its own inferences based on the evidence); *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988) (stating a jury is free to reject a defendant's version of the facts).

## ADMISSIBILITY OF CONVICTION FOR INTIMIDATION OF WITNESS

■ {18} The trial court allowed Defendant's conviction for intimidation of a witness in *McGee I* to be admitted into evidence over Defendant's objection. Defendant argues that because the elements of retaliation against a witness, for which he was on trial, and the elements of intimidation of a witness, for which he was previously convicted, are so similar, admission of the conviction for intimidation of a witness resulted in undue prejudice under Rule 11–403 NMRA 2003 (authorizing the exclusion of probative but unfairly prejudicial evidence). Defendant does not object to admission of the conviction for false imprisonment. We review the trial court's decision to admit the evidence for an abuse of discretion. *Estrada*, 2001–NMCA–034, ¶ 36, 130 N.M. 358, 24 P.3d 793. Defendant's argument fails because it overlooks the facts and holdings in *Estrada*.

{19} In *Estrada*, the defendant was convicted of embezzlement, conspiracy to commit embezzlement, and harboring a felon when he assisted another person in shoplifting from a store in which he was a loss prevention officer. The conviction was based upon an investigation and testimony of another loss prevention officer. The defendant later saw the witness and made threats. On this basis the defendant was convicted of retaliating against a witness. Section 30–24–3(B). The defendant argued on appeal that evidence of the prior convictions was reversible error. We rejected his argument, stating:

> Defendant argues that the trial court erred in admitting evidence of his prior convictions for embezzlement, conspiracy to commit embezzlement, and harboring a felon. . . . We conclude the trial court acted within its discretion in allowing the State to introduce evidence of Defendant's prior felony convictions.

Relying on *State v. Tave*, 1996–NMCA–056, ¶ ¶ 12–22, 122 N.M. 29, 919 P.2d 1094, Defendant argues that whether he was convicted of a felony is irrelevant to the

crime of retaliation against a witness, and therefore, any evidence of his prior felony convictions was inadmissible under Rule 11–402, NMRA 2001. A similar argument was made and rejected by this Court in *State v. Warsop*, 1998–NMCA–033, ¶ 19, 124 N.M. 683, 954 P.2d 748. The question in *Tave* was whether the name of a prior felony was admissible for purposes of proving a felon-in-possession charge. In *Warsop*, we held that *Tave* is distinguishable from cases involving the charge of retaliation against a witness because a felon-in-possession charge arises from an incident wholly unrelated to the predicate felony. By contrast, in cases involving retaliation against a witness, the prior felony offense is closely intertwined with the retaliation charge because the victim of the retaliation was also the witness who reported the felony in the underlying case.

In this case, Doty, the victim of the retaliation, was also the chief witness who testified against Defendant in the case resulting in his convictions for embezzlement, conspiracy to commit embezzlement, and harboring a felon. According to *Warsop*, a victim's testimony regarding what he witnessed and reported with respect to the prior felony offense is relevant to prove the defendant's intent and motive with respect to the retaliation charge.

Although Defendant is correct in pointing out that his convictions in the underlying case were not necessary to prove the crime of retaliation against a witness, *see State v. Perea*, 1999–NMCA–138, ¶¶ 7–8, 128 N.M. 263, 992 P.2d 276, we conclude that evidence of the prior convictions was nonetheless relevant and probative of Defendant's intent and motive. As the trial court properly noted, it is conceivable that Defendant would have had more reason to be angry and to retaliate if the underlying charges against him had resulted in convictions rather than acquittals. Thus, under *Warsop*, we hold that evidence of Defendant's prior convictions, including the name and nature of the prior felonies, was relevant to establish his intent and motive with respect to the retaliation charge, and the probative value of the convictions was not substantially outweighed by its prejudicial effect.

*Estrada*, 2001–NMCA–034, ¶¶ 36–39, 130 N.M. 358, 24 P.3d 793 (internal citations omitted).

{20} We hold that *Estrada* answers Defendant's contentions under this point. Victim's report and testimony resulted in Defendant's conviction for intimidation of a witness in the first case, and Defendant's subsequent threats against Victim for reporting and testifying in the first case resulted in a prosecution for retaliation against a witness in this case. Under *Estrada*, no abuse of discretion was committed in admitting the intimidation of a witness conviction into evidence, and the relevance was not substantially outweighed by its purported prejudicial effect.

## DOUBLE JEOPARDY IN SENTENCING

{21} Defendant was given six consecutive sentences for the four order of protection violations occurring on February 16, 2000, and the two order of protection violations occurring on October 2, 2000. He argues that the consecutive sentences violate his right to be free from double jeopardy in sentencing. *See Herron v. State*, 111 N.M. 357, 358, 805 P.2d 624, 625 (1991) (recognizing that subjecting defendant to multiple punishments for the same offense violates double jeopardy prohibition). Specifically, Defendant argues that he was engaged in a single course of conduct on February 16, 2000, of making or attempting to make several calls to Victim in a short period of time, and a separate single course of conduct on October 2, 2000, of making or attempting to make two calls to Victim. Therefore, his argument continues, he can only be sentenced once for each course of conduct. We review this contention de novo, *see State v. Barr*, 1999–NMCA–081, ¶ 13, 127 N.M. 504, 984 P.2d 185 (stating challenge to multiple sentences on double jeopardy grounds, though essentially constitutional, becomes one of statutory construction), and reject Defendant's argument.

{22} "Where an accused is charged with multiple violations of a single statute and raises a double jeopardy challenge, we must determine whether the legislature intended to permit multiple charges

and punishments under the circumstances of the particular case." *State v. Castañeda*, 2001–NMCA–052, ¶ 13, 130 N.M. 679, 30 P.3d 368. Where the statutory language clearly defines the unit of prosecution, the statute controls. *Barr*, 1999–NMCA–081, ¶ 14, 127 N.M. 504, 984 P.2d 185, *see State v. Borja–Guzman*, 1996–NMCA–025, ¶ 13, 121 N.M. 401, 912 P.2d 277 (holding that legislature evinced intent to permit prosecution for each distinct act of delivery of a controlled substance).

{23} The Family Violence Protection Act clearly reflects its intent that each violation shall be subject to a separate prosecution and punishment. This intent is reflected in several of its provisions. First, "domestic abuse" is defined as "any incident by a household member against another household member" which results in many different types of harm. Section 40–13–2(C). Second, anytime there is an act of "domestic abuse" a victim may petition the court for an order of protection. Section 40–13–3(A). Third, upon finding that "domestic abuse" has occurred, the court must enter an order of protection ordering the respondent to refrain from abusing the petitioner, and "[t]he court shall specifically describe the acts the court has ordered the respondent to do or refrain from doing." Section 40–13–5(A). Fourth, the order of protection "shall contain a notice that violation of any provision of the order constitutes contempt of court and may result in a fine or imprisonment or both." Section 40–13–5(B). Fifth, violation of an order of protection constitutes a crime, with mandatory sentences upon second or subsequent convictions. Section 40–13–6(E). Sixth, in addition to charging the person with violating an order of protection, a peace officer must file all other possible criminal charges arising from an incident of domestic abuse when probable cause exists. Section 40–13–6(G). Seventh, the remedies provided in the Family Violence Protection Act are in addition to any other civil or criminal remedy available to the petitioner. Section 40–13–6(H). Finally, the Family Violence Protection Act defines an "order of protection" as "a court order granted for the protection of victims of domestic abuse." Section 40–13–2(E).

{24} In this case, the order of protection clearly and unambiguously ordered Defendant not to "contact" Victim. Each and every time Defendant called Victim on February 16, 2000, and on October 2, 2000, he made a "contact" with Victim in violation of the order of protection. The legislature has made its intent clear that each violation will be punished separately. Defendant's right to be free from double jeopardy in sentencing was not violated. *See People v. Wood*, 260 A.D.2d 102, 698 N.Y.S.2d 122, 128 (N.Y.App. Div.1999) (holding it was proper for the district attorney to charge defendant with five counts of violating no contact provision of protective order for five separate calls, regardless of their closeness in time).

## CONCLUSION

{25} The judgment and sentence is affirmed.

{26} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CELIA FOY CASTILLO, Judges.