COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Beales and Russell
Argued by teleconference

PUBLISHED

ISAIAH A. GREEN

OPINION BY
v. Record No. 0589-19-1 CHIEF JUDGE MARLA GRAFF DECKER
JUNE 16, 2020

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Robert H. Sandwich, Jr., Judge

Ronilee Gomez, Deputy Public Defender, for appellant.

Zachary R. Glubiak, John Marshall Fellow (Mark R. Herring,
Attorney General, on brief), for appellee.

Isaiah Green appeals his convictions for burglary and violation of a protective order, in

violation of Code §§ 16.1-253.2 and 18.2-92. He argues that the trial court erred by finding him

guilty of burglary after it had accepted his guilty plea to common law trespass, which is excluded

from the burglary statute, as a basis for the break-in. The appellant also contends that the

evidence is insufficient to support his conviction for violation of a protective order because the

Commonwealth failed to prove that he made a "contact" with the subject of the order. For the

reasons that follow, we affirm the challenged convictions.

I. BACKGROUND[1]

The appellant's convictions arose from a series of events that began May 8, 2018. On

that day, he arrived at the apartment of Starr Catrone, the mother of his son, to pick up the child.

---

[1] "In accordance with familiar principles of appellate review, the facts will be stated in
the light most favorable to the Commonwealth, the prevailing party at trial." Gerald v.
Commonwealth, 295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381
(2016)).

Catrone told him to wait outside, but he followed her into the apartment. She urged him to leave, but instead he started screaming at her partner, Amanda Andrades.

Catrone tried to defuse the situation and guided him outside as he continued yelling. In the process, the appellant hit Catrone's hand. Andrades managed to close the door and lock the appellant outside. He banged on the door and demanded that Catrone give him their son. She went outside to speak with him. The appellant, who was still agitated, grabbed a sweater from her hand. Catrone immediately "heard a pop," and she believed that he broke her finger. Knowing that the appellant would not stop asking for their son, she took the child to the appellant.

Catrone returned to her apartment. A few minutes later, the appellant began banging on the window and repeatedly calling her on her phone. Andrades called the police, but the appellant left before the officers arrived. Catrone and Andrades left the apartment and spent the night at a hotel.

When Catrone returned to the apartment the next evening, she noticed the appellant's car parked outside. Before entering the apartment, Catrone called the police. She then opened the door to her apartment and saw the appellant inside. Catrone ran and alerted the police, who had just arrived, that the appellant was there. The appellant fled through the back door. When Catrone went inside, she saw that "[e]verything was torn up." She found two damaged photographs, clothing thrown on the floor, and urine and feces on some of her and Andrades' things. A back door to the residence was damaged, and a previously locked window was unlocked.

On May 29, 2018, Catrone obtained a preliminary protective order. The appellant was ordered, in relevant part, to "have no contact of any kind" with Catrone.

Three days later, on June 1, the appellant posted a message to his Twitter account.[2]  The message was "Someone tell my BM she was a bird for me."  On June 5, after someone notified her about it, Catrone read the message.  At trial, she explained that "BM" was an abbreviation for "baby mama," meaning her.  Catrone also testified that "a bird for you" can mean either that someone has "gone off with the wind" and is "nothing" or that person is a "ho."  The message made Catrone feel intimidated and "a little shocked."

The appellant entered a guilty plea for trespassing, which the trial court accepted.  Subsequently, the court also convicted the appellant of statutory burglary and violation of a protective order.[3]  He received a sentence of twelve months for trespass, twelve months for violation of a protective order, and five years for statutory burglary, with four years and eighteen months suspended.

## II.  ANALYSIS

The appellant presents two challenges.  First, he asserts that the trial court erred by finding him guilty of burglary after it had accepted his guilty plea to trespass.  Second, he contends that the Commonwealth failed to prove that he contacted Catrone in violation of the protective order.

### A.  Burglary

The appellant argues that the trial court erred by finding him guilty of burglary "after he had entered a guilty plea and been found guilty of common law trespass" committed "on or

---

[2] Twitter is a "social media forum[]."  Hunter v. Va. State Bar ex rel. Third Dist. Comm., 285 Va. 485, 496 (2013).  It allows users to "publish short messages, to republish or respond to others' messages, and to interact with other Twitter users in relation to those messages."  One Wisconsin Now v. Kremer, 354 F. Supp. 3d 940, 943 (W.D. Wis. 2019).  "Generally, Twitter users' timelines are visible not only to other Twitter users, but also everyone with internet access, including non-Twitter users."  Id. at 946.

[3] In addition, the appellant was convicted of domestic assault and battery, "annoying phone calls," and destruction of property.  Those offenses are not before the Court in this appeal.

about" the same day. In support of his argument, he points out that the burglary statute prohibits entering a dwelling with the intent to commit a misdemeanor *except* assault or *trespass*.

The appellant reasons that because he was convicted of trespass, he could not lawfully be convicted of burglary in light of the express exclusion of trespass as an underlying offense in the burglary statute. In other words, he argues that his intent to commit trespass, which cannot constitute the requisite intent element for burglary under the statute, precludes a burglary conviction altogether. This sufficiency challenge rests on the principle of legal impossibility.[4]

"Legal impossibility occurs when a defendant's actions would not constitute a crime, even if they were carried out fully and exactly as he intended." Masika v. Commonwealth, 63 Va. App. 330, 335 (2014). In Masika, this Court held that the defendant could not be convicted for failure to return leased property in violation of Code § 18.2-118 when he did not return a rental vehicle by the designated date. Id. at 340. The Court reasoned that Code § 18.2-118 specifically excluded leased vehicles from its scope. Id. at 339.

Similar to the statute at issue in Masika, the burglary statute contains some limiting language, specifically excluding from its scope entering a dwelling with the intent to commit a trespass. Compare Code § 18.2-92 (statutory burglary), with Code § 18.2-118 (fraudulent conversion of leased property). However, this case differs from Masika in a critical respect. In Masika, no evidence indicated that the defendant committed an act that was not excluded by the statute. The question here, by contrast, is whether the evidence supports a finding that the appellant entered the residence with an intent to commit a misdemeanor *in addition to* the

---

[4] To the extent that the appellant implied at oral argument that the conviction violated double jeopardy, he does not make this argument on brief or cite any authority for this proposition. See Rule 5A:20(e) (requiring that an appellant's opening brief contain "the argument" and supporting "principles of law and authorities"). Because this failure is significant, the issue of double jeopardy is waived. See Jay v. Commonwealth, 275 Va. 510, 518-20 (2008).

excluded offense of trespass. Therefore, our analysis turns to the sufficiency of the evidence with regard to whether some other misdemeanor not excluded by the statute permits the appellant's burglary conviction.

In determining whether the evidence was sufficient to support a criminal conviction, the appellate court views the facts in the "light most favorable" to the Commonwealth. See, e.g., Commonwealth v. Moseley, 293 Va. 455, 463 (2017) (quoting Bowman v. Commonwealth, 290 Va. 492, 494 (2015)). In conducting this review, the Court defers to the trial court's findings of fact unless they are plainly wrong or without evidence to support them. See Ramsey v. Commonwealth, 65 Va. App. 694, 697 (2015). This deferential standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth[ ] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence. Vasquez v. Commonwealth, 291 Va. 232, 236 (2016) (quoting Bowman, 290 Va. at 494). This standard "applies not only to the historical facts themselves, but [also to] the inferences from those facts." Clanton v. Commonwealth, 53 Va. App. 561, 566 (2009) (*en banc*) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2 (2003)). "These principles apply 'with equal force' to bench trials no differently than to jury trials." Moseley, 293 Va. at 463 (quoting Vasquez, 291 Va. at 249).

Code § 18.2-92 provides, in pertinent part, that it is a Class 6 felony for a person to "break" into "and enter a dwelling house . . . with the intent to commit any misdemeanor except assault and battery or trespass." Intent is typically proved by circumstantial evidence. Secret v. Commonwealth, 296 Va. 204, 229 (2018). This category of evidence "is as competent and is entitled to as much weight as direct evidence." Breeden v. Commonwealth, 43 Va. App. 169, 177 (2004) (quoting Coleman v. Commonwealth, 226 Va. 31, 53 (1983)).

In this case, the evidence clearly supports a finding that the appellant broke into the residence with the intent to commit a misdemeanor in addition to a trespass. It supports the finding that he entered the apartment with the intent to damage property in violation of Code § 18.2-137. In fact, the appellant was convicted of property damage for destruction that he caused after he broke into the apartment. The fact that the appellant entered the property intending to commit a trespass simply does not preclude the conclusion that he additionally intended to commit another misdemeanor, namely damaging property within the apartment. See, e.g., Moody v. Commonwealth, 28 Va. App. 702, 708 (1998) (holding that the defendant could act with more than one intent).

The day after an angry outburst, the appellant forced entry into Catrone's apartment and damaged personal property inside, including urinating and defecating on clothes and in a suitcase. This record supports the trial court's finding that the appellant entered the residence with the intent to trespass *and* commit another misdemeanor, specifically, destruction of property. The trial court did not err in reaching that conclusion.

### B. Violation of the Protective Order

The appellant argues that the evidence is insufficient to support his conviction for violation of a protective order because he did not "contact" Catrone in contravention of the order. He suggests that the message that he posted on Twitter was not a contact because it was public and he did not send it directly to her.

In determining whether the evidence was sufficient to support a criminal conviction, the appellate court views the facts in the light most favorable to the Commonwealth. See, e.g., Moseley, 293 Va. at 463. In conducting this review, the Court defers to the trial court's findings of fact unless they are plainly wrong or without evidence to support them. See Ramsey, 65 Va. App. at 697.

However, as applicable in this case, to the extent that the issue on appeal requires the Court to determine the meaning of a statute and its terms, it reviews that issue *de novo*. See Barson v. Commonwealth, 284 Va. 67, 71-72 (2012); Miller v. Commonwealth, 64 Va. App. 527, 537 (2015). Although criminal statutes are to be strictly construed against the Commonwealth, the appellate court must also "give reasonable effect to the words used" in the legislation. Johnson v. Commonwealth, 37 Va. App. 634, 639 (2002) (quoting Dillard v. Commonwealth, 28 Va. App. 340, 344 (1998)). Further, when interpreting a statute, the Court "'presume[s] that the legislature chose, with care, the words it use[d]' when it enact[ed the] statute." Rives v. Commonwealth, 284 Va. 1, 3 (2012) (first alteration in original) (quoting Zinone v. Lee's Crossing Homeowners Ass'n, 282 Va. 330, 337 (2011)). Consequently, if the language in a statute is "plain and unambiguous, we are bound by [its] plain meaning." Tisdale v. Commonwealth, 65 Va. App. 478, 484 (2015) (quoting Lee Cty. v. Town of St. Charles, 264 Va. 344, 348 (2002)); see Jones v. Commonwealth, 296 Va. 412, 415 (2018).

The appellant was convicted under Code § 16.1-253.2 for violating a protective order issued under Code § 16.1-253.1. Code § 16.1-253.2 provides that it is a Class 1 misdemeanor to "contact[] . . . the allegedly abused person" in violation of such a protective order.[5] Code § 16.1-253.2(A).

---

[5] "[T]he General Assembly clearly intended protective orders to safeguard the health and physical safety of a petitioner." Elliott v. Commonwealth, 277 Va. 457, 463 (2009); see also Holmon v. District of Columbia, 202 A.3d 512, 515, 522 (D.C. 2019) (explaining that a civil protection order is "designed" in part to "protect a petitioner from emotional violence" and "provide the petitioner 'a measure of peace of mind'" (quoting Maldonado v. Maldonado, 631 A.2d 40, 43 (D.C. 1993))). In some circumstances, a petitioner obtains a protective order on his or her own behalf. See generally Code §§ 16.1-253.1, -279.1 (allowing issuance of a protective order against an allegedly abusive person in order "to protect the health and safety of the petitioner [or any] family or household member[] of the petitioner"). In other circumstances, "[u]pon the motion of any person or upon the court's own motion," a court may enter a protective order to protect a child. See Code § 16.1-253(A).

When a "statute's terms are undefined" by the legislature, the Court gives those terms "their 'ordinary meaning,' in light of 'the context in which [they are] used.'" Va. Marine Res. Comm'n v. Chincoteague Inn, 287 Va. 371, 384 (2014) (alteration in original) (quoting Lawlor v. Commonwealth, 285 Va. 187, 237 (2013)). In ascertaining such meaning, dictionary definitions and pertinent analysis in prior cases may be consulted. See, e.g., Jones, 296 Va. at 415 (relying on the statutory language and a standard dictionary definition); Joseph v. Commonwealth, 64 Va. App. 332, 338-39 (2015) (relying upon multiple legal and non-legal dictionary definitions); Auer v. Commonwealth, 46 Va. App. 637, 645-47 (2005) (relying in part on definitions in prior cases).

"Contact," in pertinent part, means "an instance of establishing communication with someone." Contact, Webster's Third New International Dictionary (2002). "Contacts" prohibited by protective orders "are intentional acts . . . that intentionally pierce the protective barrier between the petitioner and the respondent fashioned by the protective order." Elliott v. Commonwealth, 277 Va. 457, 464 (2009). See generally Eric C. Surette, 28 C.J.S. Domestic Abuse and Violence § 46 (2019 & Supp. 2020) ("To constitute a violation of a no-contact provision of a protection order, the defendant's conduct must involve physical touching or some element of direct or indirect communication, or attempted communication, with the victim . . . ."). Neither the plain language of the statute nor the plain meaning of the word limits

a "contact" to a direct one.  Further, there is nothing to suggest that the prohibited "contact" cannot be through a social media platform.[6]

This case does not involve a generic comment posted on social media about the victim. The trial court found that the appellant intentionally directed the communication to Catrone by using the public forum available through Twitter.  The message itself, "*Someone tell* my BM she was a bird for me," reflects the appellant's intent to contact the victim through others—anyone who would do it.  (Emphasis added).  According to Catrone, the post specifically instructed anyone reading it to relay the message to her.  The trial court, as the fact finder, was entitled to accept this interpretation of the message.  See Maldonado v. Commonwealth, 70 Va. App. 554, 561 (2019) (noting that evaluating witness credibility is a matter for the finder of fact).  Once Catrone learned of the post, she viewed it herself on the appellant's Twitter account.  The message caused her to feel intimidated, and it shocked her.

The record supports the conclusion that the appellant intentionally contacted Catrone, albeit indirectly.  This indirect contact was all that was required to convict the appellant of violating the protective order that prohibited him from making "contact of any kind" with Catrone.  See Elliott, 277 Va. at 463-64; State v. McGee, 84 P.3d 690, 693 (N.M. Ct. App. 2003) (holding that a "contact" "is not limited to a direct communication").[7]  This evidence supported

---

[6] Other jurisdictions have held that prohibited contact can occur through social media platforms under certain circumstances.  See State v. Heffron, 190 A.3d 232, 236 (Me. 2018) (holding that the defendant contacted the protected person in a way proscribed by the statute through a social media post); State v. Craig, 112 A.3d 559, 566 (N.H. 2015) ("By posting messages addressing the victim on his public Facebook page, and directing the victim's attention to his page, the defendant both created a message and took steps to convey it to the victim."); O'Leary v. State, 109 So. 3d 874, 877 (Fla. Dist. Ct. App. 2013) (noting that "[g]iven the mission of Facebook, there is no logical reason to post comments other than to communicate them to other Facebook users").

[7] The appellant's counsel acknowledged in the trial court that contact in violation of a protective order "doesn't have to be direct."

the trial court's findings that the appellant contacted Catrone and "intentionally pierce[d] the protective barrier between the petitioner and the respondent fashioned by the protective order." See Elliott, 277 Va. at 464.

Consequently, the trial court did not err, and the record supports the conviction for violation of a protective order.

### III.  CONCLUSION

We hold that the trespass conviction does not preclude the conviction for statutory burglary because the record supports the trial court's finding that the appellant entered the residence with the intent to commit another misdemeanor in addition to trespass.  Further, we hold that the evidence was sufficient to support the finding that the appellant contacted Catrone and thus violated a provision of the protective order.  For these reasons, we affirm the convictions but remand for the correction for a clerical error.[8]

Affirmed and remanded.

---

[8] The sentencing order incorrectly provides that the applicable statute prohibiting violation of a protective order is "§16.253.2" instead of Code § 16.1-253.2.  Consequently, we remand to the trial court solely for a correction of the clerical error.  See Code § 8.01-428(B); Howell v. Commonwealth, 274 Va. 737, 739 n.*, 742 (2007); Atkins v. Commonwealth, 68 Va. App. 1, 10 (2017).