This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38184**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**TYRELL CAMEO BONNER,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James W. Counts, District Judge**

Hector H. Balderas, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**WRAY, Judge.**

**{1}**     A jury convicted Defendant of one count of bribery or threatening a witness, contrary to NMSA 1978, Section 30-24-3 (1997). We affirm Defendant's conviction, but because we conclude that the district court erred in its calculation of presentence confinement credit, we remand for recalculation.

**BACKGROUND**

**{2}** Defendant was charged in one indictment with one count of criminal sexual penetration (CSP) and in a separate indictment with two counts of threatening a witness. On the State's motion, all three counts were joined, under Rule 5-203 NMRA. The CSP count arose from allegations that Defendant, on October 17, 2015, sexually assaulted a woman (S.N.) while she was unconscious and under the influence of alcohol and prescription medication. The counts relating to threatening witnesses arose from allegations that Defendant made a threatening phone call with the intent of causing S.N. to drop her charge against him. After trial, the jury acquitted Defendant on the CSP count but found him guilty on a single count of intimidation of a witness.

**{3}** The district court sentenced Defendant to eleven years, including habitual offender time, with seventy days of presence confinement credit. The district court explained that it derived the seventy days from the sum total of presence confinement served post trial (February 20, 2019, through April 9, 2019) and an earlier period between arrest and an initial dismissal of the charges (January 4, 2016, through January 27, 2016). At sentencing, Defendant requested that the witness intimidation sentence run concurrently with the sentence he was serving for a prior drug conviction. The district court denied the request and ordered the sentence to run consecutively to the sentence in Defendant's drug conviction case. Defendant filed a motion to reconsider presence confinement credit and asserted he was entitled to nine hundred seventy eight days of credit, instead of the seventy days the district court had awarded. The district court denied the motion upon a finding that Defendant was never in custody in the witness intimidation case. Defendant appeals.

**{4}** We develop additional factual background as it becomes necessary to our analysis.

## DISCUSSION

**{5}** Defendant raises three issues on appeal. Defendant argues first that the district court incorrectly calculated pretrial confinement; second, that the evidence is insufficient to support the jury's finding that Defendant knowingly threatened or intimidated a witness; and third, that Defendant received ineffective assistance of counsel. We address each issue in turn.

## I. Defendant is Entitled to Recalculation of Presence Confinement Credit

**{6}** We review de novo the determination of presence confinement credit. *See State v. French*, 2021-NMCA-052, ¶ 9, 495 P.3d 1198. "A person held in official confinement on suspicion or charges of the commission of a felony shall, upon conviction of that or a lesser included offense, be given credit for the period spent in presence confinement against any sentence finally imposed for that offense." NMSA 1978, § 31-20-12 (1977). Generally, we interpret "the language of the statute strictly in order to grant credit when the period of presence confinement relate[s] to two different cases" but avoid a "uniformly strict interpretation" if "multiplying presence credit may have the effect of rewarding a defendant for committing multiple crimes."

*State v. Romero*, 2002-NMCA-106, ¶ 8, 132 N.M. 745, 55 P.3d 441. We briefly describe the relevant time periods.

**{7}** Before the incident, on April 29, 2015, Defendant was convicted of a drug offense, for which he received a two-year suspended sentence and probation. After the entry of the suspended sentence, Defendant was charged with sexual assault and arrested on January 3, 2016. The witness intimidation charges were first filed in September 2018. Defendant was released on his own recognizance in the witness intimidation case, though he actually remained in custody. Defendant posted bond on October 6, 2017, but was later arrested again. On March 19, 2018, Defendant exonerated the bond and was incarcerated until sentencing on April 9, 2019.

**{8}** Defendant argues he is entitled to presentence confinement credit for two time periods. The first time period spans from September 23, 2016, through October 6, 2017. The second time period spans March 19, 2018, through April 9, 2019. The State concedes that Defendant is entitled to the credit accrued during the second time period, i.e., the period of time he was held in custody on the CSP case after he exonerated his bond. Under the facts of the present case and in the absence of argument from the State, we accept the State's concession that Defendant was entitled to presentence confinement credit between March 19, 2018, and April 9, 2019. *See State v. Ramzy*, 1982-NMCA-113, ¶ 8, 98 N.M. 436, 649 P.2d 504 (indicating that "the decisive factor in allowing credit for pre-sentence confinement in a case is whether the confinement was actually related to the charges of that particular case"); *State v. Alvarez*, 2018-NMCA-006, ¶ 24, 409 P.3d 950 (stating that this Court is "not bound to accept the [s]tate's concessions"). We therefore remand for recalculation of presentence confinement credit to include the period between March 19, 2018, and April 9, 2019.

**{9}** Regarding the first time period, the briefing appears to have narrowed the disputed time to between September 23, 2016, and October 6, 2017. Defendant originally sought credit for the period between February 24, 2016, and October 6, 2017. The State responded that Defendant was not entitled to credit for this period, because he was serving a sentence on an unrelated drug offense at that time and that sentence was consecutive to any sentence in this case. In reply, Defendant did not dispute that the drug offense sentence was consecutive, but instead argued that he had finished serving his drug sentence on September 23, 2016, and was entitled to credit for the remainder of the period until October 6, 2017, when he posted bond. Defendant, however, did not establish a factual record[1] to support his contention on appeal that he completed serving the drug offense sentence on September 23, 2016. Nevertheless, the State appears to concede by its arguments on appeal that (1) Defendant is entitled to credit for time that he was incarcerated only on the CSP charges; and (2) presentence confinement credit for the first period is tied to the date that Defendant completed serving his sentence for the drug offenses. On remand, in addition to the

---

[1]The parties cite Rule 11-201(B)(2) NMRA and ask this Court to take judicial notice of pleadings in other cases. We decline to apply Rule 11-201(B)(2), a rule of evidence applicable to the district court, to review pleadings from other cases that were not brought to the attention of the district court. We instead leave to the district court on remand to determine when Defendant completed his drug offense sentence.

period of time between March 19, 2018, and April 9, 2019, Defendant is entitled to credit for any time served between the completion of the drug offense sentence and his release on bond on October 6, 2017. *See French*, 2021-NMCA-052, ¶ 9 ("Section 31-20-12 does not afford the district court discretion in awarding presentence confinement credit."); *Romero*, 2002-NMCA-106, ¶ 7 (interpreting "the statute to require mandatory credit").

## II.     The Evidence Supported Defendant's Conviction for Intimidation of a Witness

**{10}**     We next consider whether substantial evidence supported the jury's guilty verdict for intimidation of a witness. "In reviewing the sufficiency of the evidence, we determine whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Estrada*, 2001-NMCA-034, ¶ 40, 130 N.M. 358, 24 P.3d 793 (internal quotation marks and citation omitted). We do not reweigh the evidence or substitute our judgment for the jury's, and we view "the evidence in the light most favorable to the [s]tate, resolving all conflicts and indulging all permissible inferences in favor of the verdict." *Id.* The jury heard evidence that on October 30, 2015, after the alleged sexual assault, S.N.'s roommate received a call while she was with S.N., and S.N. called the investigating detective and both were able to hear the call. The investigating detective identified Defendant's voice on the call, based on his interviews and past interactions with Defendant. Defendant told S.N.'s roommate, "You need to get that little bitch to drop the charges. Because if I have to spend any more money on bond, there are going to be problems. You know the street code." Defendant additionally stated that "people around [S.N] could suffer," and he referred to S.N. as a "crazy little bitch."

**{11}**     Defendant argues that the State failed to prove that he knowingly threatened or intimidated S.N. because the phone call was made to her roommate, rather than to her directly, and he did not know the call was on speakerphone or that the threat would be communicated to S.N. We agree with the State that even though Defendant did not speak to S.N. directly, it would have been reasonable for him to expect that the roommate would inform S.N. about the threat. *Cf. State v. Warsop*, 1998-NMCA-033, ¶ 13, 124 N.M. 683, 954 P.2d 748 (explaining that "even if the threat is received by a person other than the witness against whom the defendant intends to retaliate, so long as it is reasonable to expect that the person who receives the threat would inform the victim of the threat in some way"). As a result, the evidence was sufficient to support the jury's verdict. *See State v. Vigil*, 2021-NMCA-024, ¶ 15, 489 P.3d 974 (affirming the defendant's conviction for threatening or intimidating a witness by voicemail), *cert. denied* (S-1-SC-38748, Apr. 22, 2021).

## III.     Defendant Failed to Establish a Prima Facie Case for Ineffective Assistance of Counsel

**{12}** Defendant last argues that he received ineffective assistance of counsel at trial. To establish ineffective assistance of counsel, the "[d]efendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Holly*, 2009-NMSC-004, ¶ 36, 145 N.M. 513, 201 P.3d 844 (internal quotation marks and citation omitted). The record on direct appeal does not support a prima facie case of ineffective assistance of counsel.

**{13}** Defendant maintains that his trial counsel "failed to honor his request to cross-examine about": (1) the absence of screenshot or recording evidence to corroborate the testimony about the phone call; or (2) the testimony identifying Defendant's voice. The record indicates otherwise. Indeed, the record reveals that defense counsel asked the investigating detective about whether the phone call had been recorded, whether he could clearly hear, his training in voice recognition, and whether he photographed the call history on the phone or pulled phone records. As a result, Defendant has not made a prima facie showing of error by counsel on direct appeal. *See State v. Bernal*, 2006-NMSC-050, ¶ 36, 140 N.M. 644, 146 P.3d 289 (concluding that although the defendant did not present a prima facie case of ineffective assistance of counsel on direct appeal, the decision did not preclude the defendant from pursuing habeas corpus relief).

**CONCLUSION**

**{14}** For the foregoing reasons, we affirm Defendant's conviction, reverse the district court's calculation of presentence confinement credit, and remand for recalculation.

**{15}  IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**JACQUELINE R. MEDINA, Judge**