2001-NMCA-034

24 P.3d 793

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Joseph ESTRADA, Defendant–Appellant.**

No. 20,829.

Court of Appeals of New Mexico.

April 3, 2001.

Certiorari Denied, No. 25,909,
May 29, 2001.

360

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Carolyn R. Glick, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

BUSTAMANTE, Judge.

{1} Defendant, Joseph Estrada, was convicted of retaliating against a witness, contrary to NMSA 1978, § 30-24-3(B) (1997). On appeal, he asserts that (1) the trial court erred in denying his motion for discovery on the issue of selective prosecution, (2) the trial court erred in denying his motion to dismiss the indictment on grounds of demagogic prosecution, (3) prosecutorial misconduct during closing argument constituted reversible error, (4) the trial court abused its discretion in admitting evidence of his prior convictions, and (5) the evidence was insufficient to support his conviction for retaliation against a witness. We affirm on all issues.

**FACTS**

{2} Defendant was a deputy sheriff employed by the Bernalillo County Sheriff's Department and worked part-time as a loss prevention officer at Dillards. In April 1997, following a jury trial, he was convicted of embezzlement, conspiracy to commit embezzlement, and harboring a felon. The convictions arose from charges that, while on duty as a loss prevention officer, Defendant assisted another person in shoplifting shirts from Dillards. Another loss prevention officer, Richard Doty, investigated the incident and reported it to the police. Doty testified against Defendant at the trial resulting in his convictions. Defendant received a deferred sentence and was placed on supervised probation for three years and was subsequently terminated by the Sheriff's Department. On appeal, this Court affirmed the convictions by a memorandum opinion issued on August 6, 1998.

{3} On September 1, 1998, approximately eighteen months after Defendant was convicted in the underlying case, Defendant saw Doty while walking into Foley's with his fiancee. Doty was also shopping at Foley's with his fiancee, and they were talking with Joey Tosta, a Foley's security officer whom Doty knew, near the doors on the north side of the department store.

{4} At trial, Doty and his fiancee testified that, upon entering the store, Defendant saw Doty and said, loud enough for them to hear, "There's the son of a bitch. I'll kill that mother fucker." Doty and his fiancee testified that Defendant made the remark in a threatening and aggressive tone, while looking directly at Doty. Doty also testified that he felt threatened and scared by the remark.

{5} Tosta, who is deaf in one ear, also testified at the trial. He testified that when Defendant entered the store, he looked over at Doty and said in a loud voice, "There's the son of a bitch right there. I should kill that mother fucker." It is undisputed that Defendant did not stop walking or make any physical contact with Doty at any point during the brief encounter.

{6} Approximately three months after Doty reported the threat to the police, Defendant was charged with one count of retaliating against a witness, contrary to Section 30-24-3(B). We include additional facts in our discussion of the issues.

DISCUSSION

## I. Motions to Dismiss the Indictment and for Discovery

{7} Defendant moved to dismiss the indictment based on selective and demagogic prosecution. He also moved for discovery of information relating to his selective prosecution claim. The trial court denied both motions. The gist of Defendant's selective and demagogic prosecution claims is that the State chose to prosecute Defendant solely to get him to provide information about Daryl Burt, his former partner at the Sheriff's Department. Burt was the subject of a separate criminal investigation by the federal Drug Enforcement Agency (DEA) and the Albuquerque Police Department (APD), and was suspected of committing a homicide and other violent offenses yet to be charged.

{8} In support of his motions, Defendant submitted the affidavits of two attorneys·who represented him in the defense of the retaliation charge. According to the affidavits, on April 15, 1999, four months after the indictment was filed, the prosecutor, along with two DEA agents and an APD officer, met with Defendant's attorneys to discuss the possibility of offering leniency to Defendant in exchange for any information concerning Burt and the suspected homicide. At the meeting, the State indicated its desire for incriminating information about Burt but, for some reason, made no offer to plea bargain with Defendant. The prosecutor and the law enforcement officers also informed defense counsel that Defendant could be the subject of additional criminal investigation or, at least, was a witness in the investigation. Defense counsel had the impression that the State wanted Defendant to waive his Fifth Amendment right against self-incrimination, without any concession by the District Attorney, and that the prosecutor had no interest in discussing any issues relating to the retaliation charge. On May 13, 1999, defense counsel met again with the prosecutor at the pre-trial conference. The prosecutor continued to insist that Defendant had information about Burt and should "roll over" on him. Again, defense counsel noted that the focus of the pre-trial conference was on Burt and not the charge at hand. The prosecutor also alluded to Defendant being part of an "organization" and suggested that he was in some way involved in the homicide being investigated by law enforcement officers.

{9} Defendant refused to offer any information on Burt and the alleged homicide or other violent crimes. The State continued with the prosecution of the retaliation charge against Defendant.

### A. Selective Prosecution

{10} The State, through its prosecutors, has broad discretion in determining what charges to bring and whom to prosecute. *See State v. Brule*, 1999–NMSC–026, ¶ 14, 127 N.M. 368, 981 P.2d 782. "While prosecutorial discretion in charging is quite broad, it is ordinarily limited by the requirement that the [S]tate must demonstrate probable cause that the defendant committed a particular crime." *State v. Ogden*, 118 N.M. 234, 240, 880 P.2d 845, 851 (1994). Accordingly, if the prosecutor has probable cause to believe that an accused has committed a crime, the decision whether to prosecute, and what charge to file or bring before a grand jury, generally rests within the prosecutor's discretion. *Id.* at 240–41, 880 P.2d at 851–52; *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

{11} Prosecutorial discretion, while broad, is not limitless and is bound by constitutional constraints. *See United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979). Selective prosecution is grounded in the notion that discriminatory enforcement of the law violates the Equal Protection Clause of the Fourteenth Amendment. *See State v. Cochran*, 112 N.M. 190, 192, 812 P.2d 1338, 1340 (Ct.App.1991); *see also State v. Arellano*, 1997–NMCA–074, ¶ 20, 123 N.M. 589, 943 P.2d 1042 (holding that, without a showing of discrimination on an impermissible basis, defendant has not established an equal protection violation). "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463, 116

S.Ct. 1480, 134 L.Ed.2d 687 (1996). Therefore, selective prosecution claims are to be evaluated under equal protection standards. *See Wayte,* 470 U.S. at 608, 105 S.Ct. 1524; *Cochran,* 112 N.M. at 193, 812 P.2d at 1341; *see also Mieras v. Dyncorp,* 1996–NMCA–095, ¶ 16, 122 N.M. 401, 925 P.2d 518 ("The Equal Protection Clauses contained in the United States and the New Mexico Constitutions are substantially identical and have been interpreted as providing the same protections.").

■ {12} To establish a prima facie claim of selective prosecution, the defendant must make a twofold showing. First, he must demonstrate that he was singled out for prosecution while others similarly situated have not been prosecuted. *Cochran,* 112 N.M. at 192, 812 P.2d at 1340. Second, he must demonstrate that the selection of him for prosecution was invidious or in bad faith and based on intentional, purposeful discrimination stemming from impermissible considerations, such as race, religion, or the exercise of a constitutionally protected right. *Id.* In short, the defendant must prove both a discriminatory effect and a discriminatory purpose. *Wayte,* 470 U.S. at 608, 105 S.Ct. 1524.

{13} Defendant contends that the trial court erred in denying his motion for discovery on his selective prosecution claim. He contends that the trial court's denial of his discovery motion prevented him from proving his selective prosecution claim. The discovery motion sought in relevant part: (1) a copy of every indictment filed in Second Judicial District Court charging the Defendant with retaliation against a witness where there was no physical violence or contact, (2) any information regarding ongoing investigations of violent crimes allegedly committed by Defendant, (3) any information regarding ongoing investigations of violent crimes allegedly committed by Burt, and (4) a copy of APD's standard operating procedures.

■ {14} In *Armstrong,* the United States Supreme Court determined the appropriate standard of review to evaluate discovery requests in connection with selective prosecution claims. The court observed that the "rigorous standard" required to support a selective prosecution claim on the merits justified a "correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong,* 517 U.S. at 468, 116 S.Ct. 1480. Thus, to be entitled to discovery on a selective prosecution claim, the defendant must produce " 'some evidence tending to show the existence of the essential elements of the defense,' " including discriminatory effect and discriminatory purpose. *Id.* (quoting *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974)).

■ {15} Below, Defendant offered no evidence to support the first element, discriminatory effect. The affidavits in support of the motion to dismiss do not contain any evidence that Defendant was singled out for prosecution while others who have committed the same acts were not prosecuted. *See Armstrong,* 517 U.S. at 470, 116 S.Ct. 1480 (noting that if a claim of selective prosecution is well founded, it should not be an insurmountable task for defendant to show that persons similarly situated were treated differently). Instead, the affidavits submitted by Defendant attempt to address only the discriminatory purpose prong of the claim. Therefore, we determine that Defendant failed to meet his burden of production under the first prong of the test.

■ {16} Even assuming that Defendant satisfied the first prong of the test, our review of the record does not support a finding that the State had a discriminatory purpose in prosecuting Defendant. As discussed above, to prevail on a selective prosecution claim, Defendant must show that the decision to prosecute him was based on a constitutionally impermissible ground, such as race, religion, or the exercise of a constitutionally secured right. *See Cochran,* 112 N.M. at 192, 812 P.2d at 1340.

{17} On appeal, Defendant does not contend that he belonged to any protected class of individuals. Nor does he clearly argue that he was selected for prosecution based on the exercise of a constitutionally protected right. Below, however, Defendant apparently made the argument that the State prosecuted him for exercising his Fifth Amendment right against self-incrimination.

Insofar as Defendant continues to argue that he was a victim of selective prosecution based on his exercise of Fifth Amendment rights, our review of the record does not support this claim.

{18} The record reveals that, in December 1999, the State presented the case to a grand jury which found probable cause to charge Defendant with the crime of retaliation against a witness. At the hearing on the motion to dismiss, the prosecutor informed the trial court that, when the indictment was filed on December 11, 1999, DEA agents had not yet approached the District Attorney's Office about getting Defendant's cooperation in the collateral criminal investigation of Burt. The prosecutor stated that it was not until one month after the indictment was filed that DEA agents approached her about getting Defendant to cooperate in the investigation of his former law enforcement partner. Thus, based on the chronology of events reflected in the record, Defendant cannot establish that the exercise of his Fifth Amendment right against self-incrimination played a role in the decision to prosecute him. Without proof of a causal connection between his exercise of a constitutional right and his prosecution, Defendant fails to satisfy the second prong of the test.

{19} Although Defendant argued below that the police officer who investigated the retaliation charge also initiated charges and testified against Burt in a different criminal case, Defendant failed to introduce any documentary evidence to support this factual contention. *See State v. Jacobs*, 102 N.M. 801, 805, 701 P.2d 400, 404 (Ct.App.1985) (stating that argument of counsel is not evidence and does not establish facts). Moreover, we find no evidence in the record to suggest that, before the prosecution was instituted, the same police officer informed the District Attorney's Office about Burt's relationship with Defendant and encouraged the prosecution of Defendant to pressure him to provide incriminating information about Burt.

{20} In addition, in arguing that the State acted in bad faith, Defendant emphasizes the fact that the prosecutor never offered to plea bargain with Defendant. However, a criminal defendant has no constitutional right to a plea bargain, and the decision whether to offer a plea bargain is a matter within the prosecutor's discretion. *See United States v. Moody*, 778 F.2d 1380, 1385–86 (9th Cir.1985).

{21} Therefore, because Defendant did not present evidence of either discriminatory effect or discriminatory purpose, we hold that he did not meet his threshold burden for obtaining discovery on his selective prosecution claim.

## B. Demagogic Prosecution

{22} Defendant also advances a theory that he was a victim of a demagogic prosecution. Demagogic prosecution is a label that has been applied to prosecutions brought in bad faith because they "reflect illegitimate personal considerations as opposed to proper law enforcement objectives." *See* Bennett L. Gershman, *Prosecutorial Misconduct*, § 4:68, at 4–56 (2d ed.1999). Defendant contends that the prosecution in this case was demagogic because he was charged with a relatively minor or seldom-enforced offense, coupled with overtones of political or racial animosity. *See id.* We disagree. The prosecution in this case, however, meets neither requirement.

{23} In 1997, the Legislature amended the statute defining the crime of retaliation against a witness, elevating the offense to a second degree felony, thus making it a more serious offense. *See* § 30-24-3(D). By doing so, the Legislature clearly expressed an intent to protect witnesses who come forward with information about the commission or possible commission of felonies and to punish those who threaten or retaliate against witnesses due to their reporting activities. *See* § 30-24-3(B). Hence, the crime of retaliation against a witness cannot be considered a minor or seldom-enforced offense. Moreover, as discussed above, Defendant has not presented any evidence of overtones of political or racial animosity. Thus, we conclude that the trial court properly denied Defendant's motion to dismiss the indictment based on the novel theory of demagogic prosecution.

## II. Prosecutorial Misconduct During Closing Argument

{24} Defendant argues that the State committed prosecutorial misconduct during closing argument, including several comments outside the evidence and comments on Defendant's failure to testify. "The trial court has broad discretion in controlling the conduct and remedying the errors of counsel during trial." *State v. Duffy,* 1998–NMSC–014, ¶ 46, 126 N.M. 132, 967 P.2d 807. An appellate court reviews comments made in closing argument in the context in which they occurred so as to gain full appreciation of the comments and their potential effect on the jury. *State v. Baca,* 1997–NMSC–045, ¶ 42, 124 N.M. 55, 946 P.2d 1066.

### A. Comments Outside the Evidence

{25} Defendant first claims that prosecutorial misconduct occurred when the prosecutor commented during closing argument that Defendant had the "first opportunity" to retaliate against Doty on September 1, 1998. Defendant immediately objected, and the trial court responded: "There is no evidence of any particular time other than it was the incident." Defendant argues that because the prosecutor was aware of at least three other instances in which Defendant encountered Doty since the first trial, the prosecutor's statement was purposefully misleading to the jury. Defendant claims that the jury was, in fact, misled by the prosecutor because, during deliberations, the jury sent a note to the trial judge asking whether Defendant was incarcerated during the eighteen months since the first trial and whether he had any opportunity to retaliate prior to September 1, 1998. The trial judge responded, "[D]ear jury, in answer to your question, no, you have received all the evidence. You must base your decision on that evidence."

{26} Although the prosecutor's "first opportunity" comment was inappropriate and went beyond the evidence presented at trial, we conclude that the trial court's curative instructions, both immediately after the comment was made and in response to the jury's question during deliberations, were sufficient to cure any prejudice or confusion resulting from the improper remark. *See State v. Allen,* 2000–NMSC–002, ¶ 110, 128 N.M. 482, 994 P.2d 728 (concluding that trial court's curative instruction was sufficient to offset any prejudicial effect due to lawyers' erroneous statements during closing arguments); *State v. Sellers,* 117 N.M. 644, 650, 875 P.2d 400, 406 (Ct.App.1994) (same).

{27} Moreover, the prosecutor's comment, even if erroneous, could not have influenced the outcome of the trial, given the overall strength of the evidence against Defendant. As outlined above, the State presented ample evidence, including the substantially consistent testimony of the victim and two eyewitnesses, to convict Defendant of retaliation against a witness. Therefore, we conclude that any error that occurred was harmless and could not have contributed to the jury's verdict. *See Duffy,* 1998–NMSC–014, ¶ 51, 126 N.M. 132, 967 P.2d 807, (applying harmless error analysis to claim of prosecutorial misconduct); *State v. Jett,* 111 N.M. 309, 314–15, 805 P.2d 78, 83–84 (1991) (same).

{28} Second, Defendant claims that the prosecutor engaged in misconduct by stating in closing argument: "On September 1st, 1998, the Defendant sets his eyes on Richard Doty. Coming in through these doors, he looks at Richard Doty. He reminds Richard Doty he hasn't forgotten about. . . ." Defendant argues that the prosecutor's "reminder" remark was inflammatory and outside the scope of the evidence. Although the prosecutor's remark may have bordered on arousing the jury's passions, we conclude that it was not inconsistent with the evidence and that any impropriety was cured by the trial court's admonishment that trial counsel's argument is not evidence. *Cf. State v. Abeyta,* 120 N.M. 233, 246–47, 901 P.2d 164, 177–78 (1995), *abrogated on other grounds by State v. Campos,* 1996–NMSC–043, ¶ 32 n. 4, 122 N.M. 148, 921 P.2d 1266; *see also State v. Sanchez,* 87 N.M. 140, 142, 530 P.2d 404, 406 (Ct.App.1974) (concluding that court's admonishment that counsel's statement is not evidence and that jury should disregard the statement adequately cured any prejudice that may have resulted).

{29} Third, Defendant argues that the prosecutor's comment that Defendant was convicted by a jury in the underlying case was improper because it referred to matters outside the evidence. As we discuss below, the trial court properly admitted evidence of Defendant's prior felony convictions. Thus, the prosecutor's statement that "a jury found him guilty" was supported by the evidence and was not improper. *See State v. Hernandez*, 104 N.M. 268, 275, 720 P.2d 303, 310 (Ct.App.1986) (noting that prosecutor may comment on the evidence and discuss inferences which can be drawn from the evidence).

### B. Comments on Defendant's Failure to Testify

{30} Defendant also claims that the prosecutor improperly commented on Defendant's failure to testify at trial. The privilege against self-incrimination "prohibits the prosecutor from commenting on a defendant's failure to testify at trial." *State v. Foster*, 1998–NMCA–163, ¶ 10, 126 N.M. 177, 967 P.2d 852. Where the facts are undisputed, we review de novo the legal question whether the prosecutor improperly commented on Defendant's silence. *Id.* ¶ 8.

{31} Defendant claims that, during the State's rebuttal argument, the prosecutor made two improper statements on Defendant's silence. First, after referring to the testimony of the eyewitnesses and the intent required to convict Defendant, the prosecutor stated: "There is no other evidence before you to say that he intended to say this for something else." Second, the prosecutor then stated, "We know for a fact, and we have testimony they have a right to call witnesses. Also, they chose not to."

{32} Initially, we point out that Defendant did not specifically object to the prosecutor's first comment that there was "no other evidence" that Defendant "intended" something other than retaliation. Nor was the comment addressed in Defendant's motion for a new trial. *See* Rule 12–216(A) NMRA 2001 (providing that to preserve question for review it must appear that a ruling by the trial court was fairly invoked). Nonetheless, even assuming the impropriety of the prosecutor's first comment was adequately preserved for review, we conclude that the prosecutor's statement, viewed in context, did not prejudice Defendant.

{33} At the close of arguments, shortly after the prosecutor's remark, the trial court issued the following reminder to the jury: "All right, Ladies and Gentlemen, just one thing, as I indicated, the Defendant is not required to offer any testimony or any evidence in a case. You will consider only the evidence that was submitted during the course of the trial." We determine that the trial court's cautionary instruction cured any potential harm that may have arisen from the prosecutor's statement which, at most, was an indirect comment on Defendant's failure to present evidence as to intent. *Cf. State v. La Madrid*, 1997–NMCA–057, ¶ 12, 123 N.M. 463, 943 P.2d 110 (holding that when prosecutor directs attention to defendant's failure to testify by commenting that defendant is the "only one who can tell you the motive," but does not ask the jury to draw adverse inference from silence, the trial court can cure any potential harm by giving a proper instruction). Therefore, we conclude that the prosecutor's comment was harmless beyond a reasonable doubt. *See id.*

{34} In our view, the prosecutor's second statement was a comment on Defendant's failure to produce witnesses, rather than on his failure to testify at trial. Because comments on the defendant's failure to produce witnesses are allowed, we find no prosecutorial misconduct based on the second statement. *See State v. Aguayo*, 114 N.M. 124, 132, 835 P.2d 840, 848 (Ct.App.1992) ("It is permissible to comment on a defendant's failure to produce witnesses if the comment is not one on the defendant's failure to testify."); *cf. State v. Aaron*, 102 N.M. 187, 192, 692 P.2d 1336, 1341 (Ct.App.1984) (concluding that comment on defendant's failure to call expert witness was not improper statement on defendant's silence but was permissible comment on his failure to produce witnesses). In addition, as the State points out, Defendant appears to have invited the prosecutor's comments in rebuttal where the defense stated in closing argument: "You have the evidence. Nada, nothing. The burden is on them. Remember voir dire. We don't have a burden. We elected not to put on any evidence because the moon is made out of

cheese." *See State v. Taylor,* 104 N.M. 88, 94, 717 P.2d 64, 70 (Ct.App.1986) ("Where the defendant 'opens the door' to comments by the prosecutor, such comments are invited and do not constitute reversible error, even if such comments are improper."). Therefore, for the reasons stated above, we conclude that the prosecutor's statements do not constitute reversible error.

### C. Cumulative Error

{35} Finally, Defendant claims that the combined errors of the prosecutor denied him a fair trial under the cumulative error doctrine. "The doctrine of cumulative error has no application where no errors were committed and where defendant has received a fair trial." *Id.* at 96, 717 P.2d at 72. Because we determine, for the reasons discussed above, that there was no prosecutorial error, or that, if any error occurred, it was harmless, there is no basis for Defendant's claim of cumulative error.

### III. Admission of Evidence of Defendant's Prior Convictions

{36} Defendant argues that the trial court erred in admitting evidence of his prior convictions for embezzlement, conspiracy to commit embezzlement, and harboring a felon. We review the trial court's evidentiary ruling for an abuse of discretion. *See State v. Worley,* 100 N.M. 720, 723, 676 P.2d 247, 250 (1984). We conclude the trial court acted within its discretion in allowing the State to introduce evidence of Defendant's prior felony convictions.

{37} Relying on *State v. Tave,* 1996–NMCA–056, ¶¶ 12–22, 122 N.M. 29, 919 P.2d 1094, Defendant argues that whether he was convicted of a felony is irrelevant to the crime of retaliation against a witness, and therefore, any evidence of his prior felony convictions was inadmissible under Rule 11–402 NMRA 2001. A similar argument was made and rejected by this Court in *State v. Warsop,* 1998–NMCA–033, ¶ 19, 124 N.M. 683, 954 P.2d 748. The question in *Tave* was whether the name of a prior felony was admissible for purposes of proving a felon-in-possession charge. *Tave,* 1996–NMCA–056, ¶ 12, 122 N.M. 29, 919 P.2d 1094,. In *Warsop,* we held that *Tave* is distinguishable from cases involving the charge of retaliation

against a witness because a felon-in-possession charge arises from an incident wholly unrelated to the predicate felony. *Warsop,* 1998–NMCA–033, ¶ 19, 124 N.M. 683, 954 P.2d 748,. By contrast, in cases involving retaliation against a witness, the prior felony offense is closely intertwined with the retaliation charge because the victim of the retaliation was also the witness who reported the felony in the underlying case. *Id.* ¶ 20.

{38} In this case, Doty, the victim of the retaliation, was also the chief witness who testified against Defendant in the case resulting in his convictions for embezzlement, conspiracy to commit embezzlement, and harboring a felon. According to *Warsop,* a victim's testimony regarding what he witnessed and reported with respect to the prior felony offense is relevant to prove the defendant's intent and motive with respect to the retaliation charge. *Id.* ¶ 21.

{39} Although Defendant is correct in pointing out that his convictions in the underlying case were not necessary to prove the crime of retaliation against a witness, *see State v. Perea,* 1999–NMCA–138, ¶¶ 7–8, 128 N.M. 263, 992 P.2d 276, we conclude that evidence of the prior convictions was nonetheless relevant and probative of Defendant's intent and motive. As the trial court properly noted, it is conceivable that Defendant would have had more reason to be angry and to retaliate if the underlying charges against him had resulted in convictions rather than acquittals. Thus, under *Warsop,* we hold that evidence of Defendant's prior convictions, including the name and nature of the prior felonies, was relevant to establish his intent and motive with respect to the retaliation charge, and the probative value of the convictions was not substantially outweighed by its prejudicial effect.

### IV. Sufficiency of the Evidence

{40} Finally, Defendant argues that there was insufficient evidence to support his conviction of retaliation against a witness. In reviewing the sufficiency of the evidence, we determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin,* 107 N.M. 126, 131, 753 P.2d

1314, 1319 (1988). We consider the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences in favor of the verdict. *Id.* "This court does not weigh the evidence and may not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict." *Id.*

{41} Specifically, Defendant argues that the evidence was not sufficient to support the element of intent required to sustain his conviction for retaliating against a witness. The State was required to prove beyond a reasonable doubt that Defendant threatened Doty with bodily injury with the intent to retaliate against him for reporting the commission or possible commission of a felony to a law enforcement officer. *See* § 30–24–3(B). The State presented evidence that, as Defendant walked into Foley's, he saw Doty, who had previously testified against Defendant in the underlying case, and stated, "There's the son of a bitch. I'll kill that mother fucker." Defendant argues that this statement was insufficient to prove that he had the necessary intent to retaliate against Doty because "many people use this type of language, in this context, everyday, without actually intending to retaliate." However, as a reviewing court, we do not reweigh the evidence or attempt to draw alternative inferences from the evidence. *State v. Coffin,* 1999–NMSC–038, ¶ 77, 128 N.M. 192, 991 P.2d 477.

{42} Moreover, as this Court recognized in *Warsop,* 1998–NMCA–033, ¶ 13, 124 N.M. 683, 954 P.2d 748, "criminal liability under Section 30–24–3(B) does not depend on whether Defendant intended to carry out his threat to kill the victim." Rather, it requires only an intent to retaliate or to exact "pay back" from the victim and does not necessarily involve retributive physical violence. *Id.* ¶ 14; *see also State v. Durant,* 2000–NMCA–066, ¶ 15, 129 N.M. 345, 7 P.3d 495 (noting that intent is rarely proved by direct evidence and is often proved by circumstantial evidence). Thus, viewing the evidence in the light most favorable to the State and indulging all permissible inferences in favor of upholding the verdict, we conclude there was sufficient evidence for a rational jury to find each element of the offense beyond a reasonable doubt.

**CONCLUSION**

{43} For the foregoing reasons, we affirm Defendant's conviction for retaliation against a witness.

{44} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Judge, A. JOSEPH ALARID, Judge.