This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **NO. 34,526**

**LARRY GRIMES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Hector H. Balderas, Attorney General
Laura E. Horton, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Sergio Viscoli, Appellate Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1}     Defendant Larry Grimes was jogging across the athletic field at a local high school when he called 911 seeking the assistance of the Clovis Police Department. By the end of the encounter with police, Defendant was arrested, charged, and later convicted of concealing his identity. Defendant raises two issues on appeal. The first issue challenges the sufficiency of the evidence to support the conviction because he requested the presence of the officers in the first place and had given them his full name. Defendant's second issue claims that the district court abused its discretion by allowing the prosecutor in the magistrate court trial to testify on rebuttal at his trial in the district court. Although we express our concern that the attorney who prosecuted Defendant in the magistrate court trial then sat through the entirety of Defendant's de novo bench trial in order to provide questionable rebuttal testimony, we need not reach that issue as we reverse on the concealing identity conviction.

**BACKGROUND**

{2}     At about 12:50 p.m. on April 11, 2013, four officers were dispatched to Clovis High School in response to a 911 call involving a "public affray." The officers saw Defendant, an African American man, standing on the street holding a stick, and they stopped to talk to him. Sergeant John Howard commanded Defendant to drop the stick, which Defendant did immediately. Defendant then proceeded to explain to the officers that he was on his daily run and, as he often did, he cut across the Clovis High School athletic field. As he was running across the school campus, a school security

2

guard on a four-wheeler attempted to stop Defendant. Feeling threatened by the four-wheeler coming toward him at a high rate of speed, Defendant called 911. Sergeant Howard was aware that Defendant had placed the call for assistance and that Defendant had done so because "someone had tried to run him down" as he was running through the campus.

{3} Although Sergeant Howard determined that there was no public affray, his subsequent investigation revealed that school security was trying to stop Defendant from running through the campus without first signing in. The other officers at the scene told Defendant that he could not be on school premises without signing in and that signs to that effect were posted throughout the school. Defendant asked where the signs were located and said that he wanted something in writing that he was not allowed on school property.

{4} Sergeant Howard proceeded to prepare a written notice of trespass and obtained the signature of the principal who was standing nearby. Defendant had already told the Sergeant that his name was Larry Grimes just as he had identified himself to the 911 operator earlier. In order to complete the form, however, Sergeant Howard needed Defendant's date of birth. When asked, Defendant first replied "I don't have one" and then said "I don't have a date of birth." The third time he was asked, Defendant responded, "I don't remember." Defendant was arrested and charged with concealing identity pursuant to NMSA 1978, Section 30-22-3 (1963).

{5} On July 10, 2013, a jury found Defendant guilty of concealing identity in magistrate court. Shortly thereafter, Defendant filed a de novo appeal to the Ninth Judicial District Court pursuant to NMSA 1978, Section 34-8A-6(D) (1993). After denying Defendant's motion to dismiss by written order on June 10, 2014, the case later proceeded to a bench trial. Three witnesses testified at trial: Sergeant Howard, who had previously testified at the evidentiary hearing on the motion to dismiss, Defendant, and on rebuttal, Assistant District Attorney, Laura Talbert. Ms. Talbert had prosecuted Defendant in the magistrate court proceeding and had continued to represent the State through briefing on the motion to dismiss after which time new counsel appeared on behalf of the State. Ms. Talbert was present in the courtroom throughout the district court trial. Notwithstanding that Rule 11-615 NMRA was invoked by defense counsel at the outset of the trial, and that the district court proceeding was a trial de novo, the State called her to testify as a rebuttal witness concerning statements Defendant made in the magistrate court jury trial. Defense counsel's objection to Ms. Talbert's testimony was overruled.

{6} The district court found Defendant guilty of concealing identity, noting that Defendant "impeded or attempted to impede the officer's function and that was to complete the form." Defendant was sentenced to a term of 182 days, suspended, placed on probation for that period of time, ordered to complete 100 hours of

4

community service, and was prohibited from further trespassing on the grounds of Clovis High School. This appeal followed.

**DISCUSSION**

**Standard of Review**

{7} Defendant challenges the sufficiency of the evidence against him for concealing identity. He argues that he "did not hinder Sergeant Howard in the execution of a law or the lawful performance of a duty" and that, therefore, his conviction for concealing identity must be overturned. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). We review the evidence "in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (internal quotation marks and citation omitted). We will not "reweigh the evidence or attempt to draw alternative inferences from the evidence." *State v. Estrada*, 2001-NMCA-034, ¶ 41, 130 N.M. 358, 24 P.3d 793.

{8} To the extent that we must construe Section 30-22-3, it is well settled that

> statutory construction is a matter of law we review de novo. Our primary
> goal is to ascertain and give effect to the intent of the Legislature. In
> doing so, we examine the plain language of the statute as well as the

5

context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish. We must take care to avoid adoption of a construction that would render the statute's application absurd or unreasonable or lead to injustice or contradiction.

*State v. Office of the Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 13, 285 P.3d 622 (alteration, internal quotation marks, and citation omitted).

**The Concealing Identity Statute and Sufficiency of the Evidence**

{9}     The concealing identity statute, Section 30-22-3, provides:

Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United States or of this state.

Whoever commits concealing identity is guilty of a petty misdemeanor.

{10}     Here, Defendant truthfully provided his full name to both the 911 operator (who also had his phone number) and to the four officers present at the scene. But he did not disclose his birth date—or "identity"—when asked by Sergeant Howard. The question therefore is whether the statute criminalizes Defendant's failure to provide a birth date to officers so that the no trespass form Defendant requested could be completed. For the reasons that follow, we hold that it does not.

{11}     To view the statute in context, we consider our decision in *State v. Andrews*, 1997-NMCA-017, ¶ 5, 123 N.M. 95, 934 P.2d 289. In that case, we explained that "name" and "identity" are not synonymous. *Id.* Our courts have not precisely defined

6

what it means to furnish "identity," except to say that suspects must "provide police officers the minimal, essential information regarding identity so that they can perform their duties." *Id.* ¶ 6. *Andrews* upheld the conviction of a defendant who gave his name during a traffic stop but refused to provide his driver's license or equivalent information including his address, date of birth, and social security number. *Id.* ¶¶ 7, 9. Noting that the Legislature requires every New Mexico driver to carry a driver's license and exhibit it on demand, we held that, in the context of a traffic stop, the defendant was prohibited from concealing information pertaining to his "identity," and was required to give the officers more than just a correct name. *Id.* ¶¶ 5, 6. The Court also relied in part on testimony that "this information is necessary for officers to verify a driver's license and otherwise perform their lawful duties." *Id.* ¶ 7. Consequently, in at least some contexts, furnishing "identity" requires documentation or the information contained therein. Nonetheless, in *Andrews*, we expressly declined to "specify[] what identifying information might be appropriate in all situations[.]" *Id.*

{12}     In light of that limitation, we do not agree with the district court that Section 30-22-3 criminalizes the failure to provide a birth date under the circumstances of this case. It is unclear what type of information—if any—a person who calls police for assistance and then asks for written documentation concerning his rights would need to provide those officers in order to avoid being arrested. Here, the State provides no case law indicating that any particular information or document was necessary for the

7

officers to perform their duties. Even assuming some identifying information is necessary, we cannot conclude that someone in Defendant's shoes was required to do more than provide his name.

{13}     As we have noted, concealing identity under the statute consists of concealing one's true name *or* identity. There is no dispute that Defendant provided his full and correct name to the 911 operator and again to the officers. Having provided his true name, the State makes no argument that Defendant was not who he said he was. Instead, they argue only that further "identity," i.e. Defendant's birth date, was necessary in order to fill out the no trespass form that Defendant had requested. The form itself was not introduced at trial and is not part of the record on appeal. We are therefore unable to evaluate whether Defendant's birth date was required or even necessary. And there was no testimony that Defendant's birth date was "minimal, essential information regarding identity" so that the officers could perform their duties. *See Andrews*, 1997-NMCA-017, ¶ 6. To the contrary, Sergeant Howard testified that the reason he needed Defendant's birth date was because "it's . . . on your driver's license, which is part of the information you're required to give us." This is inconsistent with *Andrews*, which held only that, *in the context of a traffic stop*, a failure to provide information contained in a driver's license falls within the reach of the concealing identity statute. *Id.* ¶ 7. This was not a traffic stop, and the State provides no additional argument or case law to support its contention that Defendant

8

was categorically required to provide identifying information contained in his driver's license. Accordingly, we conclude that Section 30-22-3 does not criminalize Defendant's behavior, particularly since Defendant had already truthfully provided the officers with his full name.

{14} Moreover, under our analysis, there was not sufficient evidence at trial to support the evidence of Defendant's guilt. The question is whether, in this case, the district court could reasonably infer Defendant intended to hinder Sergeant Howard in the discharge of his duties. The testimony at trial was that Defendant was jogging through the campus on his daily run when he felt threatened by someone on a four-wheeler coming toward him. Defendant called 911 and gave the operator his full name and location. The four police officers had no apparent trouble locating Defendant who explained to the officers that he was trying to finish his run, he got threatened by the principal, and that he had called 911. He told the officers that he didn't understand why this had happened because the principal knew Defendant's children who had attended the school, and because he had been cutting across the campus in that way since 2012.

{15} Sergeant Howard testified that he explained to Defendant that he could not be on school property without signing in and that Defendant's "consent to be on school property has been withdrawn." Apparently Sergeant Howard assumed that he could retrospectively sanction Defendant's conduct. He further said that he told Defendant

9

that there were signs posted throughout the campus that visitors had to sign in. However, on cross-examination, when asked where the signs were posted, Sergeant Howard said "I can't give specifics. Mr. Rutledge is here. I'm sure he could probably manage some more of the specifics on where they post those signs." Other than Sergeant Howard's vague assertion that the signs were "posted all over the campus," neither Mr. Rutledge nor any other witness ever testified about where those signs were actually located, leaving no evidence that Defendant would have known about the signs. In fact, the apparent lack of properly posted signs was precisely the reason that Defendant had asked for a no trespass order in writing. As we have noted, the no trespass order was not admitted into evidence, and the sole testimony concerning the need for Defendant's birth date was Sergeant Howard's statement that "on that order is a date of birth." There was no testimony that a birth date was required or how the failure to provide a birth date resulted in concealing identity when the officers already had Defendant's name and phone number. In essence, the State produced no evidence that Defendant attempted to give a false name or conceal his identity in order to prevent Sergeant Howard from providing Defendant the notice form of information he had requested. Consequently, we hold that substantial evidence showing that Defendant would not give his birth date with the intent of hindering the officers in the discharge of their duties was not presented to support the district court's verdict.

**CONCLUSION**

10

{16}    For the reasons set forth above, Defendant's conviction is reversed.

{17}    **IT IS SO ORDERED.**


_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**


_____
**TIMOTHY L. GARCIA, Judge**


_____
**M. MONICA ZAMORA, Judge**