This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38066**

**STATE OF NEW MEXICO,**

> Plaintiff-Appellee,

v.

**ARMANDO PUENTES,**

> Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Kea W. Riggs, District Court Judge**

Raúl Torrez, Attorney General
Laurie Blevins, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Santa Fe, NM
Mark A. Peralta-Silva, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**HENDERSON, Judge.**

**{1}** Pursuant to the motion for rehearing denied on March 13, 2023, the opinion filed on February 21, 2023, is withdrawn, and the following opinion is substituted in its place. Following a jury trial, Defendant Armando Puentes was convicted of criminal sexual penetration of a minor (CSPM) (child under 13), contrary to NMSA 1978, Section 30-9-11(D)(1) (2009). Defendant raises four issues on appeal: (1) the State engaged in prosecutorial misconduct; (2) the verdicts rendered by the jury were inconsistent; (3) the

district court abused its discretion by declining to reduce Defendant's sentence; and (4) the State failed to present sufficient evidence to support his conviction. Unpersuaded, we affirm.

## DISCUSSION

### I. Prosecutorial Misconduct

**{2}** Defendant argues that the State engaged in five instances of prosecutorial misconduct during its closing and rebuttal arguments. First, the prosecutor's statements about the lack of evidence contrary to the State's trial theory amounted to improper commentary on Defendant's right to remain silent. Second, those same statements impermissibly shifted the burden of proof on Defendant. Third, the prosecutor misstated the law by telling the jury that the timeframe of the charged conduct in the CSPM jury instruction was only to provide Defendant notice. Fourth, the prosecutor asked the jury to consider the consequences of its verdict. Fifth, the prosecutor misstated testimony presented during the trial. We address each argument in turn.

### A. Standard of Review

**{3}** Defendant did not preserve any of his arguments concerning prosecutorial misconduct. We accordingly review them for fundamental error. *See State v. Trujillo*, 2002-NMSC-005, ¶ 52, 131 N.M. 709, 42 P.3d 814. In conducting our review, "we begin with the presumption that the verdict was justified, and then ask whether the error was fundamental." *State v. Sosa*, 2009-NMSC-056, ¶ 37, 147 N.M. 351, 223 P.3d 348. It is the defendant's burden to establish fundamental error. *See id.* ¶ 41. "[W]e will upset a jury verdict only (1) when guilt is so doubtful as to shock the conscience, or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process." *Id.* ¶ 35. "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted). To hold that fundamental error occurred, "we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Sosa*, 2009-NMSC-056, ¶ 35 (internal quotation marks and citation omitted).

**{4}** In aiding this review, our Supreme Court has enumerated three factors for analyzing the propriety of a prosecutor's comments during closing: "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *Id.* ¶ 26. In doing so, we evaluate the statements "objectively in the context of the [state]'s broader argument and the trial as a whole." *Id.* As our Supreme Court observed, "the common thread running through the cases finding reversible error is that the [state]'s comments materially altered the trial or likely confused the jury by distorting the evidence, and thereby deprived the accused of a fair trial." *Id.* ¶ 34. In our

review, we must strike a balance between the influence that closing arguments can have on a jury and the extemporaneous nature of the closing arguments, especially a rebuttal argument. *See id.* ¶¶ 24-25. For this reason, counsel is afforded reasonable latitude in closing arguments, and jury members are instructed that "they are to base their deliberations only on the evidence along with instructions from the court, and not on argument from counsel." *Id.* ¶ 25.

## B. Commentary on Defendant's Silence

**{5}** Defendant points to two comments during the State's closing and rebuttal arguments that he asserts were improper commentary on his constitutional right to remain silent. During the State's closing argument, the prosecutor said the following:

> When you go back to the jury room, I ask that you consider all of the instructions on the law and that you apply the reasonable doubt. Reasonable doubt standard says a reasonable doubt is a doubt based upon reason and common sense. If you find you have a doubt, ask yourself, is this doubt reasonable, is it based on reason and common sense? All of the testimony I would submit to you that you've heard today is consistent with all of these incidents occurring. *There's no testimony so far that these didn't happen.* What you're going to struggle with is whether you believe it happened while she was under 13.

(Emphasis added.) Defendant did not object; instead, he rebutted this statement in his closing argument and reminded the jury that the State had the burden of proving its case. In its rebuttal, apparently to correct any misunderstanding among the jury, the State explained that it was only "asking [the jury] to consider the facts in evidence . . . ," and that it was not Defendant's burden to prove the case, but then repeated, "There is no evidence leaning the other way."

**{6}** Evaluating the State's comments in the context of its broader argument and the trial as a whole, we conclude that the comments at issue were not erroneous. Even if they were, they did not rise to the level of fundamental error. *See State v. Ocon*, 2021-NMCA-032, ¶ 7, 493 P.3d 448 (noting that the first step of the fundamental error analysis is to determine whether an error occurred), *cert. denied* (S-1-SC-38810). We explain.

**{7}** As to the first factor in *Sosa*, whether the comments invaded a distinct constitutional interest, is a close question. In *State v. Sena*, our Supreme Court held that the state violated the defendant's Fifth Amendment right to silence when it indirectly drew attention to his failure to testify during closing argument. 2020-NMSC-011, ¶¶ 12, 17, 470 P.3d 227; *see id.* ¶ 19 ("A direct comment explicitly refers to the fact that the defendant did not testify, whereas an indirect comment is one reasonably apt to direct the jury's attention to the defendant's failure to testify." (internal quotation marks and citation omitted)). There, the state pointed out to the jury that the defendant refused to look at the victim while she was on the witness stand but watched every other witness

while they testified. *Id.* ¶ 12. The state continued by verbalizing the implied: "[the defendant] knew what he'd done. [The defendant] knew what he did." *Id.* ¶ 20 (internal quotation marks omitted).

**{8}** Under a reversible error standard, our Supreme Court determined that the state's comment—drawing attention to his demeanor in an accusatory tone—was an indirect reference to the defendant's silence. *Id.* ¶¶ 19-20, 22, 25. It concluded that "[t]he prosecutor's arguments directly asked the jury to draw adverse conclusions from the fact that [the d]efendant did not take the witness stand and explain himself." *Id.* ¶ 25. Although the argument was preserved in *Sena*, our Supreme Court implied that any comment "that invites the jury to draw an adverse conclusion from a defendant's failure to testify" would "result in fundamental error." *Id.* ¶ 18. But in context because our Supreme Court in *Sena* was not evaluating prosecutorial misconduct under a fundamental error standard, and *Sosa* instructs us to evaluate all the circumstances surrounding the asserted misconduct, we do not view this statement as dispositive. *See Sosa*, 2009-NMSC-056, ¶ 26 (articulating factors in which an invasion of a "distinct constitutional protection" was *one* to consider when evaluating whether prosecutor comments require reversal).

**{9}** Defendant relies on *Sena* in arguing that the State's comments were "reasonably apt to direct the jury's attention to [D]efendant's failure to testify," and thus violated Defendant's Fifth Amendment privilege. 2020-NMSC-011, ¶ 19 (internal quotation marks and citation omitted). True, our Supreme Court in *Sena* stated that "[w]hen a prosecutor makes a comment that invites the jury to draw an adverse conclusion from a defendant's failure to testify, the defendant's Fifth Amendment privilege is violated." *Id.* ¶ 18. Unlike the statements in *Sena*, however, the prosecutor here never called out Defendant's demeanor, nor that he failed to explain himself to the jury. The prosecutor here also appeared mindful of avoiding the issue, considering his reiteration during rebuttal that the State has the burden of proving its case. The prosecutor's statements were also framed around whether the State had sufficient evidence: there was no evidence otherwise, from the State's witnesses, physical evidence, or Defendant undermining it, such as by producing witnesses. *See State v. Aguayo*, 1992-NMCA-044, ¶ 37, 114 N.M. 124, 835 P.2d 840 ("It is permissible to comment on a defendant's failure to produce witnesses if the comment is not one on the defendant's failure to testify."). Moreover, in other cases, we have held that the State's comments on the lack of evidence were permissible. *See State v. Estrada*, 2001-NMCA-034, ¶ 34, 130 N.M. 358, 24 P.3d 793 (concluding that comments to the jury such as "[t]here is no other evidence before you to say that [the defendant]" did not intend to threaten a witness, were permissible comments on the defendant's failure to produce witnesses (internal quotation marks omitted)); *State v. Peters*, 1997-NMCA-084, ¶ 30, 123 N.M. 667, 944 P.2d 896 (holding that comments that a defendant who was "falsely accused" would continue to work to find evidence undermining that accusation was not a comment on the defendant's silence (internal quotation marks omitted)). Given the distinctions between this case and *Sena*, we do not characterize the State's comments about the lack of contrary evidence as a comment on Defendant's silence.

**{10}** Moving to the second factor from *Sosa*, we acknowledge that we are left only with a cold transcript to review. We do not know the speed at which the statements were made, or the tone or emphasis placed on them. What we do know, however, is that the State's closing argument was long, and the two sentences Defendant complains of were isolated in the midst of it all. There were no objections to draw the jury's attention to the comments, and neither were the comments a pervasive theme in the prosecutor's closing. *Cf. State v. Henderson*, 1983-NMCA-137, ¶¶ 7, 10, 100 N.M. 519, 673 P.2d 144 (concluding that it was prosecutorial misconduct to include in closing a lengthy "true story" about the consequences of acquitting "a man who was tried for rape" during which multiple objections were made); *State v. Diaz*, 1983-NMCA-091, ¶ 19, 100 N.M. 210, 668 P.2d 326. Furthermore, defense counsel responded to the comments in his closing to the jury. And finally, the jury did not find Defendant guilty of the other two similar counts with which he was charged, indicating that the State's comments did not persuade the jury. Given the foregoing, it does not appear the comments complained of here were pervasive.

**{11}** Regarding the third factor in *Sosa*, there is no serious argument that Defendant invited the State's comments before its closing. Given that the two other factors lean in favor of the State's comments being permissible, they do not rise to the level of prosecutorial misconduct, let alone fundamental error. Moreover, even if we were to view the State's comments as misconduct, we are not persuaded that they arise to the level of fundamental error. Given the foregoing, these two comments were not so persuasive and prejudicial as to "create[] a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *See Sosa*, 2009-NMSC-056, ¶ 35 (internal quotation marks and citation omitted). In the context of the trial as a whole, as discussed further below, the State presented a significant amount of evidence regarding Defendant's conviction of CSPM. *See id.* ¶ 26. In sum, we conclude the State's comments during closing and rebuttal argument did not amount to fundamental error.

## C.    Shifting the Burden to Defendant

**{12}** Defendant next argues that the State impermissibly shifted the burden of proof when it commented on the lack of testimony and physical evidence that Defendant did not commit CSPM. We also reject this argument, noting that Defendant has not provided us with any New Mexico authority to support his position. The comments Defendant complains of do not appear to be intentionally made but inadvertent.

**{13}** Much of our analysis concerning the factors in *Sosa* applies here, so we will not repeat them. We do not regard the State's statements—that the jury had not heard any testimony that the improper sexual acts at issue did not happen and that there was "no evidence leaning the other way"—as shifting the burden of proof. Rather, we view them as isolated statements to support the argument that the evidence offered by the State is sufficient to prove Defendant's guilt, and there is no evidence to the contrary. Again, it is not necessarily the case that Defendant could be the only source of contrary evidence. *See Aguayo*, 1992-NMCA-044, ¶ 37. Moreover, even assuming the State's comments

indirectly suggested a shifting of the burden of proof to Defendant, it was not so persuasive and prejudicial as to affect the jury's verdict and deprive Defendant of a fair trial. *See Allen*, 2000-NMSC-002, ¶ 95. The district court instructed the jury that it was the State's burden to prove Defendant's guilt beyond a reasonable doubt. *See State v. Armendarez*, 1992-NMSC-012, ¶ 13, 113 N.M. 335, 825 P.2d 1245 ("We presume that the jury followed the written instructions."). Both the State and Defendant commented that it was the State's burden to prove the case. In addition, the jury acquitted Defendant of the two other charges brought against him despite not presenting any evidence. We believe there is no reasonable probability that the error, if any, was a significant factor in the jury's deliberation and denied him a fair trial. We hold that the State's comments regarding improperly shifting the burden of proof did not rise to the level of fundamental error.

## D.      Misstating the Law in the Jury Instructions

**{14}**    Defendant also contends that the State's comment that the timeframe in the jury instructions was only to provide him notice misstated the law. The jury was instructed that a CSPM conviction required Defendant's conduct to have occurred "in New Mexico on or about or between October 30, 2013 to November 30, 2013." *See* UJI 14-957 NMRA. Before the parties presented their closing arguments, the district court read each of the jury instructions to the jury and instructed it "to follow the law as contained in these instructions" and "not pick out one instruction or parts of an instruction and disregard others." However, during the State's closing and rebuttal arguments, the prosecutor stated that the dates of the charging timeframe were to provide Defendant notice and that "[w]e only have to prove that . . . Defendant committed the crime on [Child] when she was under 13." Defendant argues that this statement invited the jury to disregard an essential element of CSPM, namely the date when the underlying events occurred.

**{15}**    New Mexico case law establishes that an appellate court will not "assume that the jury took the comment during closing and applied it as the law governing the case, ignoring the instructions given by the court." *State v. Baca*, 1997-NMSC-045, ¶ 45, 124 N.M. 55, 946 P.2d 1066, *overruled on other grounds by State v. Belanger*, 2009-NMSC-025, 146 N.M. 357, 210 P.3d 783. "We presume that the jury followed the written instructions and did not rely for its verdict on one very brief part of the [s]tate's closing remarks." *Armendarez*, 1992-NMSC-012, ¶ 13.

**{16}**    Assuming without deciding that these were misstatements, we decline to hold it resulted in fundamental error. Under fundamental error review, we do not believe these statements deprived Defendant of a fair trial. At trial, the State presented evidence that the sexual act between Defendant and Child of which he was convicted occurred approximately one to two months after Defendant's daughter was born, which was in October 2013. Because such evidence was presented, we do not conclude that the State's commentary regarding the timeframe in the jury instructions rose to the level of fundamental error. *See State v. Cunningham*, 2000-NMSC-009, ¶ 21, 128 N.M. 711, 998 P.2d 176 (stating that the party "alleging fundamental error must demonstrate the

existence of circumstances that shock the conscience or implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked" (internal quotation marks and citation omitted)). Therefore, we hold that the State's statements regarding the timeframe in the jury instructions did not deprive Defendant of a fair trial.

**E.    Asking the Jury to Concern Itself With the Consequences of Its Verdict**

**{17}**    Defendant next argues that the State improperly asked the jury to consider the consequences of its verdict. According to Defendant, the State "asked the jury to consider the consequences of its verdict when [it] emphasized that if [Defendant] was acquitted then the State could not come back and pursue other charges." Defendant further argues that the State's comments "impressed upon the jury that even if they felt unsure about convicting [Defendant] of the crimes charged, this would be the State's only opportunity to hold him accountable for some lesser misdeeds the jury may find were committed." We disagree and explain.

**{18}**    During its closing, the State said the following:

> Count 2 is charged differently than Count 1. Count 2–instead of Count 1 being charged narrowly, the one month around when [Defendant's daughter] was born, Count 2 is charged more broadly. The law allows us to charge a count more broadly. It still gives the defendant notice as to this crime occurring in that period of time. It gives him notice so he can prepare a defense and so the state cannot come back and retry him on further charges.
>
> The state has to present all of our evidence, all of our counts in this case, all of the crimes in one charging document. State cannot convict him or take him to trial on these counts and then take him back and take him to trial on same counts that–or different conduct that occurred in the same time period.

We interpret the statement within the context of what the State said immediately before and after, not to ask the jury to concern itself with the consequences of the verdict, but to educate them on why there were multiple similar counts. Furthermore, at the end of the State's closing argument, it explicitly asked the jury not to concern itself with the consequences of its verdict. In its rebuttal, the State addressed this matter again, stating:

> It is not a consequence of your verdict to understand and realize that we have to charge everything in the charging document. We don't get to come back and, oh, they found him not guilty; well, let's pick a few different incidents during that same timeframe and try again. That doesn't happen.

Presumably, this was done in response to defense counsel reminding the jury in his closing that it should not concern itself with consequences of the verdict. *See State v Ancira*, 2022-NMCA-053, ¶ 36, 517 P.3d 292 ("In New Mexico, it is well established that a jury must not consider the consequences of its verdict." (internal quotation marks and citation omitted)). Given the context of the State's brief comments to explain why there were multiple similar counts, we hold that this comment in the State's closing that Defendant contends was improper did not amount to prosecutorial misconduct.

## F.  Misstating the Evidence in the Record

{19}    Defendant's fifth and final argument of prosecutorial misconduct is that the State misstated evidence in the record. During its closing, the State claimed that Child's parents testified that Child "cried" after two incidents with Defendant. The State concedes that the prosecutor misstated evidence in the record but argues that it was an inconsequential mistake.

{20}    The state "has a duty not to misstate the facts." *State v. Garvin*, 2005-NMCA-107, ¶ 29, 138 N.M. 164, 117 P.3d 970. Although "the [state] is allowed reasonable latitude in closing argument . . . the [state]'s remarks must be based on the evidence." *State v. Taylor*, 1986-NMCA-011, ¶ 25, 104 N.M. 88, 717 P.2d 64. Here, Child's parents did not testify that Child "cried" after the incidents in question but that they saw Child "mad," "upset," and "frightened." Although the State misstated Child's parents' testimony, the State is permitted "reasonable latitude in [its] closing argument," because of their extemporaneous nature. *See id.* The remarks made of Child displaying several negative emotions after the incidents in question were similar in effect to the statement by the State. Thus that statement is unlikely to have been a significant factor in the jury's deliberations. *See Sosa*, 2009-NMSC-056, ¶ 35. Consequently, Defendant has not established that the State's misstatements regarding Child's parents' testimony rose to the level of fundamental error.

## II.  Cumulative Error

{21}    Defendant argues that all the comments detailed above, considered along with disruptions by Child and family members in the jury's presence, deprived him of a fair trial. We disagree. "Cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 937. The doctrine is strictly applied, however, and "cannot be invoked when the record as a whole demonstrates that the defendant received a fair trial." *State v. Salas*, 2010-NMSC-028, ¶ 39, 148 N.M. 313, 236 P.3d 32 (internal quotation marks and citation omitted). As we discuss below, the State presented sufficient evidence to support Defendant's conviction, even absent the comments and disruptions complained of.

{22}    Additionally, each of the comments the State made that Defendant complains of either did not amount to misconduct or fundamental error. Finally, while we appreciate

that Child and family may have been told by the courtroom staff to "settle down," the district court, which has the benefit of witnessing the conduct, did not appear to find it necessary to admonish Child or family, nor did Defendant raise it as an issue for the district court to instruct the jury to ignore during its deliberations. Because we have concluded there was either no error, or if error did occur, it did not rise to the level of fundamental error, and because we find no merit to Defendant's claim that he was deprived of a fair trial, we hold that there was no cumulative error.

### III.    Sufficiency of the Evidence

**{23}**    Separate from any asserted errors at trial, Defendant contends that the State failed to present sufficient evidence to support his conviction of CSPM beyond a reasonable doubt. We are not persuaded.

**{24}**    The standard for reviewing whether a verdict is supported by sufficient evidence is well established. *See State v. Montoya*, 2015-NMSC-010, ¶¶ 52-53, 345 P.3d 1056 (requiring appellate courts to review evidence in the light most favorable to the verdict to determine whether a reasonable jury "*could* have found beyond a reasonable doubt the essential facts required for a conviction" (internal quotation marks and citation omitted)). Defendant's argument centers on the fact that no physical evidence was presented at trial, only testimony. However, "the testimony of a single witness may legally suffice as evidence upon which the jury may f[ind] a verdict of guilt." *State v. Hunter*, 1933-NMSC-069, ¶ 6, 37 N.M. 382, 24 P.2d 251. The rest of Defendant's briefing on this issue consists of summaries of witness testimony without noting any particular deficiencies. Based on our review of the evidence, we conclude that sufficient evidence was presented that Defendant digitally penetrated Child when she was under thirteen and did so in New Mexico between October 30, 2013, and November 30, 2013. *See* UJI 14-957; *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (in reviewing the sufficiency of the evidence, "jury instructions become the law of the case" (alteration, internal quotation marks, and citation omitted)).

### IV.    Defendant's Arguments without Merit

**{25}**    Finally, Defendant argues that because the jury acquitted him of two of three counts he was charged with, his conviction of CSPM poses an inconsistency, and that the district court erred by declining to reduce his sentence because he failed to take responsibility for his conviction. Having reviewed these arguments, we find them to be without merit. *See State v. Roper*, 2001-NMCA-093, ¶ 24, 131 N.M. 189, 34 P.3d 133; *State v. Cawley*, 1990-NMSC-088, ¶ 26, 110 N.M. 705, 799 P.2d 574. Therefore, we decline to address these matters further.

### CONCLUSION

**{26}**    Based on the foregoing, we affirm Defendant's conviction of CSPM.

**{27}    IT IS SO ORDERED.**

SHAMMARA H. HENDERSON, Judge

WE CONCUR:

MEGAN P. DUFFY, Judge

GERALD E. BACA, Judge